ROBERT N. NILLES, INC., Petitioner, *v.* THE POLLUTION CONTROL BOARD *et al.,* Respondents.

(No. 72-156; 

Second District—March 11, 1974.

Lombardi & Clark, of Lake Forest, for petitioner.

William J. Scott, Attorney General, of Chicago (Richard Cosby and Kenneth J. Gumbiner, Assistant Attorneys General, of counsel), for appellees.

Mr. JUSTICE THOMAS J. MORAN delivered the opinion of the court:

Petitioner-corporation petitions for review of the Illinois Pollution Control Board's (the Board) denial of its petition for a variance without

a hearing. The issue presented for review is whether the Board erred in summarily dismissing the petition.

Petitioner is in the business of constructing homes. In February of 1970, it contracted to purchase a tract of land which was later subdivided. The Environmental Protection Agency issued sewer permits for the subdivision on November 9, 1970. Shortly thereafter lot 5 was connected and, on January 18, 1971, the North Shore Sanitary District (the District) approved the sewer connections for the subdivision.

All sewer connections within the District were banned by the Board on March 31, 1971. In April and May of 1971, the Village of Lake Bluff granted the corporation building permits, including sewer tapping permits, for lots 1, 2, 4, 6, 7 and 10.

Lots 1 and 10 were connected prior to February 17, 1972, when the Board, in a separate suit against the petitioner and others, entered an order which stated, "because of the apparent good faith reliance on the acts of the District and the Village, connections made by Nilles, Inc. prior to service of this complaint are excepted from this Order." Thus, Lots 1, 5 and 10 were excepted.

On March 16, 1972, the corporation filed its original petition requesting that the balance of the subdivision lots be granted a variance from the Board's ban on sewer connections. By a 5-0 decision, the Board found the petition moot in that, under another order, 5000 new connections had been granted for the Clavey Road and Waukegan plants and the corporation could apply for permits under that decision.

Subsequently, a letter from the District informed the corporation that it was not eligible for any of the 5000 new connections because none of its lots drained into the Clavey Road or Waukegan plants; that its lots were tributary to the Lake Bluff plant and that the permit of November 9, 1970, was incorrect in stating that its lots were tributary to the Clavey Road plant.

The corporation then filed an amended petition for variance and, in a 3-2 decision, the Board summarily dismissed the same, holding that even if all the allegations were proved or if the Board were to accept as true all the factual allegations of the petition, no variance could be granted because the Board could not find proof that compliance with the order would impose an arbitrary or unreasonable hardship on the corporation.

Section 35 of the Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, § 1035) allows the Board to grant individual variances whenever it is found that its order would impose an arbitrary or unreasonable hardship. Section 26 (Ill. Rev. Stat. 1971, ch. 111½, § 1026) permits the Board to adopt procedural rules, and pursuant to that section rules were

adopted in October of 1970; Rule 405(b)(1) concerns authorization of hearing and states:

"* * * The Board shall authorize a hearing unless it determines * * * (1) that even if all the facts alleged in the petition are true, the petitioner is not entitled to a variance * * *."

Rule 401(a)(1) states the factual allegations necessary within a petition and subsection (2) states that petitioner must include:

"* * * a concise statement of why petitioner believes that compliance with the provisions from which the variance is sought would impose an arbitrary or unreasonable hardship, including a description of the costs that compliance would impose on the petitioner and others and of the injury that the grant of the variance would impose on the public. * * *"

The corporation's amended petition alleged that the granting of the petition would impose no material injury or hardship on the public but the denial of the petition would cause an arbitrary or unreasonable hardship on the corporation by the loss of substantial sums, specifically: the land was purchased for $67,500 and an unpaid balance of $30,375 remained ($37,125 having been already paid), $27,000 has been spent for sewer and street improvements, $2,717.49 for engineering fees, $2,410.50 for necessary permits, $4,900 for interest, and $17,447.10 for legal, accounting and miscellaneous costs; that additionally, denial would result in petitioner's forfeiture of the land itself, that it is presently incurring tax liabilities at the rate of $366.67 per month, and that it would sustain the loss of potential buyers, long-term financing, personal assets and foreseeable income, the net result being possible bankruptcy.

In support of the order it is urged that these allegations fall far short of establishing a prima facie showing of an unreasonable and arbitrary hardship; that the Board had no way of knowing what kind of hardship, if any, would be imposed if the petition were denied. We, however, find that when taken as true (as required by the Board's own Rule 405(b)(1)), the amended petition states in clear and convincing language that large sums of money already spent will be lost and the anticipated future income from the venture will not be realized. Petitioner alleged that the balance of the purchase price ($30,375) was due December 31, 1971, and unless a variance was allowed, the seller could declare a forfeiture under the purchase agreement, retain all payments and take possession of the property. In response to this allegation, it is argued that the date had passed for the forfeiture of the land and it could therefore be presumed that the corporation had obtained a waiver. This is pure conjecture on the part of the Board and, even if true, would not be persuasive in light of the other hardships alleged.

■■ Erroneously relying upon section 35, it is further maintained that the Board was correct in summarily dismissing the petition without a hearing since the corporation has failed to meet the burden of proof. True, a petitioner bears the burden of showing an unreasonable or arbitrary hardship (Ill. Rev. Stat. 1971, ch. 111½, § 1037). We find that at this stage of the proceedings and in light of the requirement that a petitioner's statements be presumed true, the corporation has met this burden.

It is argued that self-imposed hardship cannot serve as the basis for relief, citing *River Forest Bank & Trust Co. v. Zoning Board of Appeals*, 34 Ill.App.2d 412, 419 (1961). Upon this basis it is claimed that allegations of certain paid expenditures are insufficient to show an arbitrary or unreasonable hardship since the petition failed to state whether the debts were incurred before or after the "sewer ban" of March 31, 1971.

■■ In *Wachta v. Pollution Control Board*, 8 Ill.App.3d 436, 440 (1972), this court held that where the petitioner, in reliance upon the actions of the Water Board, expended substantial sums of money and incurred heavy, continuing liabilities, the Pollution Control Board would be estopped from denying a variance. In the instant case, the mere fact that the corporation's petition did not set forth the dates of its enumerated expenditures and liabilities does not, in and of itself, subject the matter to summary disposition. It is not necessary to plead evidentiary matters and a hearing on the merits should have been allowed. The question of the self-imposition of expenditures and liabilities is one of fact and should be brought out at the hearing. The allegations in the petition set forth facts which raise in our minds the question of whether or not the rule in the *Wachta* case should be applied herein.

Finally, it is asserted that the decision of the Board was correct, since petitioner could not rely on the November 9, 1970, permits. This contention is based on a condition of the permits which state:

> "If any statement or representation in the application is found to be incorrect, this permit may be revoked and the permittee thereupon waives all rights thereunder."

The petitioner relied upon the permits issued and, in that reliance, expended time and money. The permits extended only the right to connect petitioner's lines to the village sewer system and when the permits were found to be incorrect, petitioner, at that point in time, lost this right. However, this clause did not limit the petitioner's future right to seek a variance or a new permit, nor did it interfere with his right to claim equitable estoppel or estoppel *in pais*.

■■ We find that the allegations of the amended petition, viewed as true, clearly state facts sufficient to support a claim of unreasonable or

arbitrary hardship entitling the petitioner to a hearing. By balancing the petitioner's hardships against those which the public would suffer from the granting of the petition, the arbitrary or unreasonable nature of petitioner's hardship becomes even more evident. Administrative and judicial proceedings are governed by the fundamental principles and requirement of due process of law. An administrative body, as well as a court, has broad discretionary powers, but this power must be exercised judiciously, not arbitrarily. (*Brown v. Air Pollution Control Board*, 37 Ill.2d 450, 454-455 (1967).

Under the circumstances herein and for the reasons stated, we conclude that by summarily disposing of the corporation's amended petition, the Board acted arbitrarily. Its order, therefore, must be reversed and the cause remanded for hearing.

In view of this conclusion, we deny petitioner's motion which was taken with the case.

Order reversed, cause remanded.

GUILD, P. J., and SEIDENFELD, J., concur.