MATERIAL SERVICE CORPORATION, Petitioner, *v.* THE POLLUTION CONTROL BOARD *et al.*, Respondents.

Third District   No. 75-191

Opinion filed August 27, 1976.

STENGEL, J., specially concurring.

Gould & Ratner, of Chicago (Louis R. Hegeman, of counsel), for petitioner.

William J. Scott, Attorney General, of Chicago (James L. Dobrovolny, Assistant Attorney General, of counsel), for respondents.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:
This is an appeal from a final order of the Illinois Pollution Control Board which denied, without any hearing, a petition for variance by Material Service Corporation, which was filed under the provisions of the Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1001 *et seq.*). Petitioner Material Service Corporation requests that the cause be remanded to the Illinois Pollution Control Board with directions to grant it a hearing on its petition for a variance. The petition for a variance was denied without a hearing as we have noted.

From the record it appears that Material Service Corporation operates an expanded shale facility at its plant in the Ottawa, Illinois, area. The plant processes shale into a special lightweight concrete material known as Dy-Core, which is substantially lighter than conventional concrete and is used for lightweight construction projects such as highrise buildings. The process involves several steps by which the rough shale is reduced in size and it is processed in the final heating until it bloats or pops, in a manner similar to popcorn. The product is then conveyed to a storage area, and is eventually shipped out to buyers.

At the time of the filing of the petition, Material Service Corporation

supplied about 1,200 tons of material per day, which was used by approximately 200 companies in a six-State area. The plant directly employs approximately 110 persons from the Ottawa-Marseilles area, and, in addition, also supplies employment in 100 other support and use industries, including trucking, barge traffic and rail operations in the area, according to the petition.

Petitioner asserts that it had installed pollution control devices in the top of the kiln stack five years ago. The Environmental Protection Agency denied operating permits for both the shale sizing plant and the expanded shale system in January and February of 1973. In the early part of 1975 plaintiff filed a petition for a variance for one year with the Pollution Control Board and attached engineering diagrams and time schedules for plant improvements which would bring both the shale sizing plant and the finished product operation into compliance with Agency requirements. The proposals would cost approximately $700,000. Petitioner also asserted that it would expend $3.2 million dollars in a program to upgrade further control of pollutants at the plant and that this activity would inure to the well-being of people in the area.

The Environmental Protection Agency had denied operating permits, and in December 1974, it sent petitioner notice of delinquencies and the possible results thereof. The petition for variance was filed on February 13, 1975 and sought a one-year variance from the applicable particulate matter limitation of the air pollution regulations of the Board.

The Environmental Protection Agency filed a recommendation with the Pollution Control Board that the variance be denied, but stated, alternatively, that if the variance were granted in spite of its objection, that certain conditions should be imposed in connection with the granting of the variance. The Pollution Control Board issued an opinion and order on May 8, 1975, the 84th day of a 90-day period provided under the statute in which the Board must take some action, or the resulting 1-year variance would automatically be granted. The order issued by the Pollution Control Board denied the petition for a variance, without having any hearing.

The issue before us, therefore, is whether it was proper for the Board to deny the petition for variance without a hearing. Initially, from our examination of the legislation authorizing action by the Pollution Control Board on petitions for a variance, we note that section 37 of the Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1037) provides in the pertinent portion of such section:

> "* * * If the Board, in its discretion, concludes that a hearing would be advisable, *or if the Agency or any other person files a written objection to the grant of such variance* within 21 days, then a *hearing* shall be held * * *." (Emphasis added.)

In the instant case, as noted in the brief of the Pollution Control Board, the Environmental Protection Agency filed objection and recommended that the variance not be granted, but stated, alternatively, that if the variance was granted, certain conditions should be imposed. We note, also, that the procedural rule adopted by the Board itself (Rule 405(b)) states:

> "If no objection is made by the Agency or by any other person to the grant of the variance within 21 days after the filing of the petition, the Chairman shall place the matter on the agenda for Board determination whether or not to hold a hearing."

It appears obvious that the legislation enacted by the State legislature requires that a hearing be granted to petitioner, in view of the fact that the Environmental Protection Agency has filed objection thereto prior to any action by the Pollution Control Board. Obviously, if the Environmental Protection Agency had filed an objection after 21 days, but before action by the Pollution Control Board, it could hardly be consistent with the objectives of the Act to have the Pollution Control Board then say that the Environmental Protection Agency is too late and that the Board will simply accept the statements of petitioner as true, ignore the Environmental Protection Agency, and grant the variance. Similarly, prior to any action by the Pollution Control Board, when the Environmental Protection Agency has filed objections, the Board could not, consistently, arbitrarily dismiss the petition, when the Environmental Protection Act stresses the need for a hearing, if any objection is filed before the Board has acted.

It, therefore, appears to this Court that the Board failed to follow the basic objective of the Act, or, in fact, to follow its own rules, which necessarily must stem from the statutory authority granted by the legislature. Any portion of the rules inconsistent with the legislative provision or objectives would necessarily be improper. In section 37 it is specifically stated that "if the Agency * * * files a written objection to the grant of such variance," a hearing is mandated and should be granted.

The order of the Pollution Control Board which denied the petition for variance without a hearing, actually recited that "petitioner has a reasonable program of compliance," and stated that it did not satisfy the test for a variance, on the theory that no arbitrary or unreasonable hardship has been "shown." It also recites that while petitioner may not have been initially aware that its facility had any emission problem, denial of permits should have prompted petitioner to undertake efforts to satisfy the regulations.

Even if we were to find authority in the Pollution Control Board to deny a petition without a hearing under the circumstances such as exist in the present case, the petition for variance shows in paragraphs 18, 19 and

20 that an unnecessary and unreasonable hardship would be imposed if the variance is not granted. In paragraph 18, the petitioner recites that "the proposed variance would pose no threat or health hazard to the area. The plant is in a rural setting with farmland bordering on the west, north and east sides of the plant." In paragraph 19, it is alleged: "The plant is the *sole* lightweight aggregate manufacturer in the State of Illinois and serves over 200 companies in a 6 State area with a highly specialized aggregate product." In paragraph 20 it is stated: "The granting of a variance would spare the Ottawa-Marseilles area, an economically depressed area, the loss of one of its basic industries. The Plant employs 110 employees drawn from the Ottawa-Marseilles area and, in addition, generates employment for an additional 100 support industries which include trucking, barge traffic and rail operations in the above area."

While paragraph 20 does not use terminology such as the Board recites, the clear import of what is alleged is that, in the event the variance is not granted, the plant would be required to be closed down. The petition states: "The granting of the variance would *spare* [the area] the *loss* of one of its basic industries." (Emphasis added.) It is also shown in paragraph 18 that the effects of granting the variance would not be harmful to the public, and in paragraph 19 it alleges the economic importance of the industry to the surrounding area. It is thus apparent that hardship is alleged (the possible closing of the plant), and that the hardship to both petitioner and the public would be arbitrary and unreasonable in light of the lack of harm done by granting the variance and the importance of the industry to the economic welfare of the surrounding area. We do not interpret the "hardship" referred to as being exclusively restricted to the hardship occasioned to the petitioner, but that it also includes hardship to the area and consideration of economic effects of termination of production there. The evidentiary facts in support of such assertions could properly be brought forth in a hearing. In the instant case the problem is that no hearing was granted.

We note that the opinion issued by the Board was not in fact a determination that the petition was insufficient as a pleading, but is set forth as a determination on the merits of the issue. The Board in its opinion states: "The Agency argued that the petitioner has failed to *establish* any arbitrary or unreasonable hardship" and concludes that "No arbitrary or unreasonable hardship has been *shown*". (Emphasis added.) Since there was no hearing granted, it is difficult to see how arbitrary or unreasonable hardship could be shown, other than through proof in a hearing.

It is apparent from the structure of the opinion, by the Pollution Control Board, that it was making a determination on so-called "facts", since it included in the opinion data from the EPA report on particulate

emissions and even the local civil defense office report of complaints from persons residing downwind from the plant (although it recited that no complaints had been received recently). The Board, also, without any evidence as a result of a hearing, concludes that no efforts at compliance had been made by petitioner.

When the Board presumably has only the petition before it and is not involved in a hearing, the allegations of the petition are to be viewed as true. There was no hearing in the instant case, yet the Board has incorporated the allegations contained in the objection filed by the Agency, as if such allegations are true and without an opportunity to the petitioner to rebut or otherwise show the right of the petitioner, by evidence, to the variance requested. It appears that the Board has actually disregarded the allegations of the petitioner and has accepted as true, and to the exclusion of any potential reply, statements contained in the Agency objection. As stated in *Nilles, Inc. v. Pollution Control Board* (2d Dist. 1974), 17 Ill. App. 3d 890, 893-94, 308 N.E.2d 640:

> "* * * the allegations of the amended petition, viewed as true, clearly state facts sufficient to support a claim of unreasonable or arbitrary hardship entitling the petitioner to a hearing. By balancing the petitioner's hardships against those which the public would suffer from the granting of the petition, the arbitrary or unreasonable nature of petitioner's hardship becomes even more evident. Administrative and judicial proceedings are governed by the fundamental principles and requirement of due process of law. An administrative body, as well as a court, has broad discretionary powers, but this power must be exercised judiciously, not arbitrarily."

As applied to the petition under consideration, it is clear that the petition set out facts which, at that stage of the proceedings, required a hearing on such issues which were pertinent for consideration, including the profit and loss picture of the plant, its effect on employment, and past efforts of petitioner to reduce pollution as well as the technical feasibility and current effectiveness of control devices. The petition appears to contain well-considered technical and engineering proposals, timetables, blueprints and other material which, even the Board agrees in its order, was a "reasonable program of compliance." The summary disposition by the Board, without a hearing, following the objection of the Environmental Protection Agency and the acceptance of the Agency statements, was not consistent with the objective specified in the Environmental Protection Act. We agree with petitioner that it would have been reasonable for the Board, in view of the objections of the Agency and the provisions of the Act, to have at least planned a hearing to ascertain such facts as are pertinent to the determination of the issue.

The case of *Nilles v. Pollution Control Board* (2d Dist. 1974), 17 Ill. App. 3d 890, 308 N.E.2d 640, which held that the Board abused its discretion in denying a variance from a sewer construction ban without a hearing, has been cited by both parties to this action. We believe that general principles recited in the *Nilles* case support the position of petitioner, that the Board should assume, in accordance with its Rule 405, that the petition is true and recognize that the petition itself is not an evidentiary end, but merely a means of raising issues for later hearing. Even the balancing test recited in the *Nilles* case, when applied to the instant case, indicates that an unreasonable hardship results from denying petitioner a hearing, and that the hardship would be felt extensively by the employees and industries in the area.

The Pollution Control Board order apparently relied heavily on the presumption that Material Service Corporation had done nothing to improve or control the emissions at the plant. We find no basis in the petition for such conclusion.

A hearing was contemplated in section 37 of the legislation to which we have referred. The section contemplates a hearing in the event there is an objection to the petition by the Environmental Protection Agency. Even under the Board rules and procedures, as well as the precedents in the courts, such as the *Nilles* case, the petition should not have been denied without a hearing.

For the reasons stated, we conclude that the summary action of the Pollution Control Board in dismissing the petition for variance without a hearing was arbitrary and should be reversed. This cause is, therefore, reversed and remanded to the Pollution Control Board with directions to conduct a hearing on the petition, and for such other procedure as is pertinent for disposition of the issues raised by the petition.

Reversed and remanded with directions.

STOUDER, J., concurs.

Mr. JUSTICE STENGEL, specially concurring:

I concur in the result reached in this case; however, I believe the import of the majority opinion would require the Illinois Pollution Control Board to grant a variance if petitioner proves the allegations of its petition. In other words, this court has gone beyond the question of whether a hearing was required and has determined the sufficiency of the petition. I would not go so far.

Two points will illustrate my concern. Rule 401, part IV, of the Illinois Pollution Control Board Procedural Rules sets out the requirements for a petition for variance. In addition to showing that compliance would

impose an arbitrary or unreasonable hardship, petitioner is required to show details of past efforts to achieve compliance and reasons for delay in complying. The petition before us is totally silent as to past efforts to comply and as to reasons for the delay being sought. If enforcement of pollution control standards is not to be thwarted, the Board, in exercise of its discretion, can surely deny a temporary variance and impose penalties for noncompliance where emission standards have been ignored for two years without good cause. Unlike the majority, I believe the Board would be fully justified in presuming that petitioner had done nothing to control emissions at its plant on the basis of the facts alleged in the petition.

Secondly, I am not persuaded that the facts alleged in the petition, if proved, would establish an unreasonable hardship as a matter of law. Rather the allegations would present, at best, a question of fact to be determined by the Board.

In *Nilles v. Pollution Control Board* (2d Dist. 1974), 17 Ill. App. 3d 890, 892, 308 N.E.2d 640, 642, which held that the Board abused its discretion in denying a variance from a sewer connection ban without a hearing, the reviewing court expressly found that "the amended petition states in clear and convincing language that large sums of money already spent will be lost and the anticipated future income for the [subdivision] venture will not be realized."

The petition here does not allege that petitioner has expended substantial sums or incurred continuing liabilities in reliance upon Board actions. (See *First National Bank v. Pollution Control Board* (4th Dist. 1976), 37 Ill. App. 3d 383, 346 N.E.2d 181; *Wachta v. Pollution Control Board* (2d Dist. 1972), 8 Ill. App. 3d 436, 289 N.E.2d 484). Implicit in the petition, of course, is the threat of a monetary penalty or a plant closing order if the variance is denied. However, a self-imposed hardship cannot serve as the basis for relief. *Nilles v. Pollution Control Board* (2d Dist. 1974), 17 Ill. App. 3d 890, 308 N.E.2d 640.

According to *Nilles*, the Board is required to balance petitioner's hardships from denial of a variance against those the public would suffer if the variance is granted. The majority opinion states that application of that test indicates an unreasonable hardship resulting from a denial of the variance. However, that is precisely the question to be decided at the hearing, and should not be predetermined here.

In summary, I agree that petitioner was entitled to a hearing on its request for variance, but I cannot agree that the facts alleged in the complaint, if proved, would be sufficient to compel the Board to grant a variance. That determination is properly a matter for the Board at the conclusion of the hearing, and I would limit this court's opinion accordingly. However, I concur in the decision to reverse and remand.