UNION OIL COMPANY OF CALIFORNIA, Petitioner, *v.* THE POLLUTION CONTROL BOARD, Respondent.

Third District    No. 73-198

Opinion filed November 24, 1976.

Hackbert, Rooks, Pitts, Fullagar & Poust, of Chicago (Joseph Wright, of counsel), for petitioner.

William J. Scott, Attorney General, of Springfield (Russell R. Eggert, of Chicago, of counsel), for respondent.

Mr. JUSTICE BARRY delivered the opinion of the court:

Petitioner is a corporation that owns and operates a petroleum refinery with related equipment and facilities located within the Third Appellate District. Petitioner has also filed an identical petition in the First Appellate District (No. 59461). Both petitions involve the initial judicial review, pursuant to section 29 of the Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1029), challenging the validity of the Illinois Pollution Control Board's Regulation R72-2 adopted on July 26, 1973. Said section 29 provides:

> "Any person adversely affected or threatened by any rule or regulation of the Board may obtain a determination of the validity or application of such rule or regulation by petition for review under Section 41 of this Act." (Ill. Rev. Stat. 1971, ch. 111½, par. 1029.)

Thus the Environmental Protection Act makes express provision for judicial review of the Board's rule-making function under terms of the Administrative Review Act (Ill. Rev. Stat. 1971, ch. 110, par. 264 *et seq.*).

Regulation R72-2 is a comprehensive noise pollution control regulation. In 1970, after the effective date of the Illinois Environmental Protection Act, the Illinois Environmental Protection Agency presented a proposal to the Illinois Institute for Environmental Quality suggesting the creation of a task force to develop proposals for regulations to abate noise pollution. Pursuant to the authority of the Environmental Protection Act the Task Force on Noise was formed in 1971. It drafted suggested standards to be used for the regulation of noise. The Task Force was composed of Mr. John S. Moore of the EPA division of Noise Pollution Control and nine members of the University of Illinois faculty. The acoustical firm of Bolt, Beranek & Newman entered into a contract to assist the Task Force in preparation of its formal report. Early in 1972 the Task Force submitted its report. Between June 1972 and May 1973 the Illinois P.C.B. conducted 16 public hearings throughout the State to consider the proposed regulations. As a result of these public hearings the original proposed regulations were substantially modified and made more lenient in regulating noise in the final version adopted.

For rulemaking purposes, noise sources were broadly grouped into four categories:

(1) Stationary or property line noises
(2) Ground transportation noises
(3) Construction sites
(4) Airports.

The regulations relevant to this appeal concern themselves only with the first category, stationary or property line noises.

The structure of the challenged regulation adopts a classification scheme in which there are in effect, four classes of "receivers" and four classes of "emitters." This classification of actual land users was accomplished by assigning each land use to a particular category as defined by the Standard Land Use Coding System (SLUCM Code). Class A receivers are those most sensitive to noise and hence are given the highest degree of protection, including among others, residences, hospitals, schools and libraries. Class B receivers are less sensitive and receive correspondingly less protection, including among others, retail and wholesale establishments, banks, courthouses and some parks. Class C receivers are the least sensitive of those protected. They include industrial plants, mining operations and agricultural land. Finally, there are receivers which are unclassified and therefore receive no protection and include undeveloped and unused land, vacant floor area, and water areas.

Emitters are classified according to the amount of noise they produce and the difficulty of silencing. In general the classification of an emitter— A, B, C or unclassified—is the same as its classification as a receiver.

This comprehensive noise pollution regulation combines the receiver and emitter categories with varying maximum permissible noise emission limits in an effort to balance the most protection for each class of receivers with the ability and requirements of the various class of emitters to abate noise.

Petitioner, Union Oil Company, seeks a preenforcement judicial review of the applicability of regulation R72-2 of the Pollution Control Board. The three issues presented for review as phrased by petitioner are as follows:

(1) Is the regulation (R72-2) contrary to the manifest weight of the evidence assembled in the record before the Board?

(2) Is the regulation (R72-2) consistent with the requirement of the Environmental Protection Act?

(3) Does the regulation (R72-2) violate due process?

Implicit in phrasing the issues in this manner, petitioner is requesting this court to weigh the Board's noise regulation against the evidence contained in the record of the public hearings conducted prior to the formulation and adoption of the disputed regulation. Petitioner seeks a determination of whether the regulation finally adopted is contrary to the manifest weight of the evidence as presented in the record.

■■■ We are not inclined to decide this case on the issue of whether the challenged regulation is supported by the manifest weight of the rule-making record in light of the interpretation *Illinois Coal Operators*

*Association v. Pollution Control Board* (1974), 59 Ill. 2d 305, 319 N.E.2d 782, and by the Fifth Appellate District in *Shell Oil Co. v. Pollution Control Board* (1976), 37 Ill. App. 3d 264, 346 N.E.2d 212. As was argued in *Shell Oil Co. v. Pollution Control Board* (1976), 37 Ill. App. 3d 264, 346 N.E.2d 212, the petitioner here contends that the proper standard of judicial review is whether the regulation is supported by the manifest weight of the record particularly with regard to the economic reasonableness and the technological feasibility of the proposed regulation. The Illinois Supreme Court rejected the manifest weight of the evidence test and adopted as the standard whether the regulation was clearly arbitrary, unreasonable or capricious. (*Illinois Coal Operators Association v. Pollution Control Board* (1974), 59 Ill. 2d 305, 319 N.E.2d 782). We agree that a distinct difference exists in the standards which the courts should use in reviewing the decisions of an administrative agency functioning in an adjudicatory role as opposed to a rule-making legislative role. (See *Shell Oil Co. v. Pollution Control Board* (1976), 37 Ill. App. 3d 264, 346 N.E.2d 212, and Presiding Justice Karns' concurring opinion.) Quite logically the reviewing court should only uphold the action of an administrative agency in its quasi-judicial role as an adjudicatory body when it is satisfied that the decision of the agency is supported by the manifest weight of the evidence. When reviewing an administrative agency in its quasi-legislative role as a rule-making body the reviewing court should act with due deference to the legislative character of the authority delegated to the agency by the legislature. If the agency has not exceeded its delegated authority in promulgating rules and regulations, those enactments should not be set aside unless its action thereon is arbitrary and capricious. The Illinois legislature recognized the need for specialized expertise in the field of controlling noise pollution and accordingly delegated the task of formulating specific rules and regulations to effectuate the general requirements of abating noise pollution consistent with the directives of the Illinois Environmental Protection Act, (Ill. Rev. Stat. 1971, ch. 111½, par. 1001 *et seq.*), to the Illinois Pollution Control Board.

■■ We find that the regulation in dispute, R72-2, did not exceed the authority of the Pollution Control Board's rule making power under the Environmental Protection Act. We conclude, after reviewing the record on appeal and after applying the arbitrary and capricious standard to Regulation R72-2, that the regulation is valid. Petitioner has failed to establish on the basis of the rule-making record that the Pollution Control Board's Regulation R72-2 is clearly arbitrary or capricious. If petitioner finds the Board's regulations truly an economic or technological hardship, the variance procedure before the Board is the procedure for solving the

problem. See *Material Service Corp. v. Pollution Control Board* (1976), 41 Ill. App. 3d 192, 354 N.E.2d 37.

■■ Union Oil Co. finally argues that the regulation violates due process. This contention is two-pronged. First petitioner insists that Rule 102 of Regulation R72-2 is unconstitutionally vague and overbroad. Rule 102 provides "No person shall cause or allow the emission of sound beyond the boundaries of his property so as to cause noise pollution in Illinois or so as to violate any provision of this chapter or the Illinois Environmental Protection Act." Noise Pollution is defined in Rule 101 (j) of Regulation R72-2 as "the emission of sound that unreasonably interferes with the enjoyment of life or with any lawful business or activity." The argument is without merit. In both the *Illinois Coal Operators Association* and *Shell Oil Co.* cases a determination was made that the regulation should properly be interpreted by reading section 25 of the Act in conjunction with section 24. Such an interpretation contemplates that the legislature intended the Pollution Control Board would adopt regulations which would define noise emissions which constitute unreasonable interference with enjoyment of life or lawful activities and effectively cure any possible vagueness or overbreadth. Secondly, petitioner asserts that the regulation is an unconstitutional taking of property and that it exceeds the police power of the State. We are persuaded the regulation does not exceed the broad police power of the State in that the regulation has a legitimate legislative purpose and has a reasonable relationship to the specific object sought to be attained by its enactment. Although we agree that the regulation does interfere with the absolute use of private property, the interference is permissible. The petitioner may use his private property as he chooses so long as he meets the noise abatement standards imposed by Regulation R72-2. The need for control of noise pollution is properly a question for the legislature. We view the regulation as in no manner amounting to an unlawful taking of use, enjoyment of any alleged vested rights of petitioner in his private property. In accord with the views expressed in this opinion, the challenged noise regulations adopted by the Illinois Pollution Control Board are, and Regulation R72-2 is, valid and approved.

Affirmed.

STOUDER, P. J., and STENGEL, J., concur.