Dear Honorable Sheila E. Hixson
You have asked for our opinion whether a county ordinance concerning air quality could validly restrict the smoking of tobacco inside a private residence, or on the deck or porch of an apartment or townhouse, if a harmful or offensive quantity of the smoke "crossed property lines and offended neighbors."
In our opinion, this kind of legislation, although controversial, would be within the police power of a charter county, if it were designed to protect the public health or welfare. In addition, it would not be preempted by State or federal law, and would likely withstand constitutional challenge. Of course, the validity of such an ordinance would depend on the specific provisions of the ordinance.
 I Background
Your question was prompted by a proposed Montgomery County ordinance, Bill 42-01, passed by the County Council but vetoed by the County Executive. Among other provisions, that measure would have prohibited the emission of certain air pollutants beyond a person's property line, or beyond an individual unit in a multi-family or multi-tenant building, so as to create ambient or indoor air pollution.[1] The prohibitions in the ordinance would have been enforced through civil remedies.
While you have not asked us to evaluate the Montgomery County bill or another specific proposal, we answer your question on the premise that the hypothetical local ordinance about which you inquire would restrict smoking in a private residence when a substantial amount of smoke was emitted from the residence and posed a health hazard or significantly interfered with a neighbor's enjoyment of the neighbor's property.[2]
 II Local Authority
In an opinion issued nearly 10 years ago, this Office concluded that a local ordinance restricting smoking in public places would be within the police power of a charter county and would not be preempted by either State or federal law. 78 Opinions of the Attorney General 359, 373-75 (1993) ("1993 Attorney General Opinion"). Courts in other jurisdictions have reached similar conclusions.[3] We believe that the same conclusion would pertain to an ordinance that restricted smoking on private property if harmful or offensive smoke was transmitted outside that property.
A. Police Power of Charter County
The Express Powers Act authorizes charter counties "to pass such ordinances as may be deemed expedient in maintaining the peace, good government, health and welfare of the county." Annotated Code of Maryland, Article 25A, § 5(S); Montgomery Citizens League v.Greenhalgh, 253 Md. 151, 160, 252 A.2d 242 (1969) (charter county has power to pass all ordinances it deems expedient under the police power). Under its police power, a home rule jurisdiction has authority "to declare what shall be deemed nuisances and to provide for their suppression." Adams v. Commissioners of Town of Trappe, 204 Md. 165,174, 102 A.2d 830 (1954). "[T]he only limitation upon its right to exercise the power is that any interference by it with the unrestricted use of private property must be reasonably necessary to the public welfare and consistent with the guarantees of the Constitution." Id.
There is no dispute that exposure to environmental tobacco smoke commonly referred to a second-hand smoke) is harmful to health. See Foglev. HG Restaurant, Inc., 337 Md. 441, 459, 654 A.2d 449 (1995) (citing "abundant scientific evidence" that environmental tobacco smoke is a "significant risk" to health); see also 1993 Attorney General Opinion at p. 375 n. 14; Decision of Commissioner of Labor and Industry on ProposedRegulation to Prohibit Smoking in Enclosed Workplaces, 21:15 Md. Reg. 1336 (July 22, 1994). An ordinance restricting smoke emanating from a residence would presumably be designed to protect the public health from this hazard.[4]
In our view, an ordinance that restricted smoking in a private residence when a significant amount of smoke ended up in neighboring residences would be within the police power of a charter county.
B. Preemption
A local law that is authorized under the Express Powers Act may nonetheless be preempted by conflict, expressly preempted, or impliedly preempted. Tyma v. Montgomery County, 369 Md. 497, 517 n. 16, 801 A.2d 148
(2002); Talbot County v. Skipper, 329 Md. 481, 487-88, 620 A.2d 880
(1993). While there has been no new federal law[5] to regulate smoking generally since the 1993 Attorney General Opinion, a State law enacted during the interim raises a possible preemption issue with respect to smoking in private residences.
In 1994, the Commissioner of Labor and Industry adopted regulations prohibiting smoking in enclosed workplaces. See 21:15 Md. Reg. 1304 (July 22, 1994), codified at COMAR 09.12.23. Various commercial interests challenged those regulations, arguing, among other things, that the regulations were preempted by other State law. The Court of Appeals confirmed that the regulations were not preempted, because the General Assembly "has not regulated smoking in so all-encompassing a fashion as to suggest that it meant to reserve to itself for direct legislative action all regulation of smoking." Fogle v. HG Restaurant,337 Md. 441, 464, 654 A.2d 449 (1995).
In reaction to the regulations, the Legislature enacted a law restricting their application. Chapter 5, Laws of Maryland 1995. While the 1995 legislation primarily concerned the regulation of smoking in certain types of businesses, such as bars and restaurants, it also alluded to smoking in private residences. In particular, the law amended three different sections of the Annotated Code of Maryland to state that "[n]otwithstanding any regulations adopted . . . under this section, the smoking of tobacco products is permitted in . . . any portion of a private residence which is not open to the public for business purposes." Annotated Code of Maryland, Business Regulation Article ("BR"), § 2-105(d)(1)(i)1; Labor Employment Article ("LE"), §§ 2-106(c)(1)(i)1, 5-314(c)(1)(i)1.
On its face, the 1995 legislation did not purport to occupy the field of smoking regulation. In particular, it did not contain any language expressly preempting local law.[6] Indeed, an uncodified section stated explicitly that the legislation was not intended to preempt stricter local regulation of smoking in public places covered by the Act. Chapter 5, § 2, Laws of Maryland 1995; see also 80 Opinions of the AttorneyGeneral (1995) [Opinion No. 95-042 (September 29, 1995)], slip op. at p. 3.
Nor could the 1995 legislation reasonably be interpreted as an implicit preemption of local air quality regulation with respect to tobacco smoke and private residences. Each of the references to smoking in private residences appears in a section concerning the authority of a State official to adopt regulations. B.R. § 2-105
(rulemaking authority of Secretary of Labor, Licensing and Regulation); LE § 2-106 (rulemaking authority of Commissioner of Labor and Industry); LE § 5-314 (emergency rulemaking authority of Commissioner). In context, these parallel references to a private residence apparently concern residences used in whole or in part as a workplace.[7]
Thus, in our view, the Legislature was not establishing a general right to smoke in a private residence that would supersede any local regulation. Rather, it was limiting the ability of State officials to exercise authority they would otherwise have had to restrict workplace smoking in contexts that might involve private residences.[8]. While the legislation was clearly intended to block any attempt by one of the named State officials to regulate smoking within a strictly private residence by way of occupational safety regulations, there is no indication that the Legislature intended to eliminate local police power to regulate tobacco smoke emanating from a residence.[9]
C. Summary
Thus, an ordinance, enacted by a charter home rule county, that would restrict smoking in a private residence if the smoke passed to other property in sufficient quantity to endanger public health or well being, would be a valid local law, subject to constitutional limits.
 II Constitutional Limits A. Standard of Review
The constitutional standard that courts will apply to evaluate any regulatory measure depends on the nature of the interest burdened by the measure. If that interest is within the category that the Supreme Court has recognized as "fundamental rights," the measure will be subjected to strict scrutiny. Otherwise, the courts will apply a deferential "rational basis" analysis. See Vacco v. Quill, 521 U.S. 793, 799-800 (1997) (statute outlawing assisted suicide subject to rational basis test).
Some activities that are subject to regulation in other circumstances may be protected by a fundamental right to privacy when they take place in a home. For example, in Stanley v. Georgia, 394 U.S. 557 (1969), the Supreme Court held that, despite the broad power states have to regulate obscenity, that power does not extend to mere possession of obscene material by an individual in the privacy of the individual's own home. The Court acknowledged a fundamental personal "right to be free, except in very limited circumstances, from unwanted governmental intrusions into one's privacy." Id. at 564. The Court traced this right to liberties guaranteed by the First and Fourteenth Amendments. Id. at 565, 568. Butsee Bowers v. Hardwick, 478 U.S. 186, 195 (1986) (rejecting constitutional challenge to Georgia sodomy statute as applied to consensual homosexual activity within a home).
The Supreme Court recently reiterated that the Fourth Amendment draws "a firm line" at the entrance to a residence, and held that the government was obligated to obtain a search warrant to use thermal imaging to gather evidence of illegal drug cultivation within a home.Kyllo v. United States, 533 U.S. 27, 40 (2001).[10] The Court characterized the interior of a home as "the prototypical and hence most commonly litigated area of protected privacy." Id. at 34.
B. Application to Local Air Quality Ordinance
The 1993 Attorney General Opinion concluded that smoking is not a fundamental right and that restrictions on public smoking need only have a rational basis to be upheld against constitutional challenge. 78Opinions of the Attorney General 359, 374-75 (1993). But regulation of smoking within a private residence was not at issue in that opinion. InFogle, the Court of Appeals specifically declined to decide whether a constitutional right to privacy would protect a person from being forbidden to smoke in the person's own home if one or more persons were employed there, since the Commissioner of Labor and Industry conceded, contrary to a possible reading of his decision adopting the 1994 workplace smoking regulations, that the regulations would not extend so far. 377 Md. at 467-68.
We are aware of no case that has characterized smoking tobacco as a fundamental right. Indeed, several courts have rejected a claim that there is a fundamental "right to smoke" for purposes of constitutional analysis. Most of these cases have concerned the regulation of smoking in public places. See Tri-Nel Management, Inc. v. Board of Health,433 Mass. 217, 741 N.E.2d 37 (2001) (town regulation banning smoking in all food service establishments, lounges, and bars); City of Tucson v.Grezaffi, supra, 23 P.3d at 681-82 (municipal ordinance restricting smoking in restaurants); Craig v. Buncombe County Board of Education,80 N.C. App. 683, 343 S.E.2d 222, 223 (N.C.Ct.App. 1986) (school ban on use and possession of tobacco products by students).
Other cases, however, have indicated that smoking in private has no greater protection. See Operation Badlaw, Inc. v. Licking County GeneralHealth District Board of Health, 866 F. Supp. 1059, 1067 (1992), aff'dmem., 991 F.2d 796 (6th Cir. 1993) (stating that court's research disclosed no case extending the right to privacy as far as the right to smoke either in public or in private); Grusendorf v. City of OklahomaCity, 816 F.2d 539 (10th Cir. 1987) (upholding regulation prohibiting fire fighter trainees from smoking either on or off duty and declining to find a fundamental constitutional right to smoke).
We think it unlikely that a court would hold that a local air quality ordinance applicable to environmental tobacco smoke implicates a fundamental right to privacy. Unlike the situation in Stanley, which involved the possession of obscene materials inside a residence, the type of ordinance you have posited would be concerned with the adverse effects of environmental tobacco smoke outside the residence.[11] Moreover, the constitutional right of privacy associated with the home, as described inKyllo, would more likely restrict the manner in which the ordinance could be enforced than invalidate the ordinance. An analogous situation currently exists in that criminal statutes prohibit the possession — which obviously could include smoking — of marijuana in a residence, as much as in any other location. The privacy rights protected by the Constitution do not make such possession legal in the home, but rather limit government's ability to gather evidence of a violation occurring in the privacy of the home. Thus, in Kyllo, the issue was not whether the prohibition against cultivation and possession of marijuana applied to the defendant's residence, but rather whether the government could obtain evidence of the violation in the home without a search warrant.
Because there is no fundamental right to smoke, any county ordinance like the one you hypothesize would almost certainly be subjected to the less restrictive "rational basis" analysis, under which the court defers to the legislative body in its judgment about the proper balance to be made between competing interests.
 III Conclusion
In our opinion, an ordinance enacted by a charter county that would restrict the smoking of tobacco in a private residence, if the smoke traveled to nearby property in sufficient quantity to offend or harm others, would be a reasonable exercise of the county's police power, would not be preempted by other law, and would likely be upheld against a constitutional challenge.
J. Joseph Curran, Jr. Attorney General
Judith A. Armold Assistant Attorney General
Robert N. McDonald Chief Counsel,
Opinions Advice
[1] The amended version of the bill we reviewed specifically stated that the prohibition on indoor air pollution did not apply to "smoking in a private home." Cite as 87 Opinions of the Attorney General ___ (2002) [Opinion No. 02-016 (September 23, 2002)
[2] Such an ordinance presumably would quantify in some way the threshold amount of smoke that would trigger a violation of the ordinance.
[3] See, e.g., City of Tucson v. Grezaffi, 200 Ariz. 130, 23 P.2d 675,679-80 (Ariz. Ct. Aps. 2001) (charter city had authority to address perceived health issue by restricting restaurant smoking); Amico's Inc.v. Mattos, 2001 WL 1685597 at 7 (R.I.Super. 2001) (home rule municipality had authority to restrict smoking in restaurants and bars to protect the public health and safety against adverse effects of environmental tobacco smoke); City of San Jose v. Dep't of HealthServices, 66 Cal.App.4th 35, 77 Cal.Rptr.2d 609, 613 (1998) (city's broad police power authorized regulation of smoking in public buildings and places of employment); cf. City of Zion v. Behrens, 262 Ill. 510,104 N.E. 836 (1914) (municipal police power would support prohibiting smoking in street cars, theaters, and other gathering places, but not in open streets or parks of city). Similarly, courts have upheld ordinances restricting noise pollution. See State v. Ewing, 81 Haw. 156, 914 P.2d 549,557-58 (1996) (city ordinance could restrict in public places noise generated from radios and other devices); Union Oil Co. v. IllinoisPollution Control Board, 43 Ill. App.3d 927, 357 N.E.2d 715 (1976) (upholding noise control regulation as permissible exercise of state's police power); Ferndale Heights Utilities Co. v. Illinois PollutionControl Board, 44 Ill. App.3d 962, 358 N.E.2d 1224 (1976) (same).
[4] Even before the health hazards of tobacco smoke were widely recognized, cases had upheld regulations restricting smoking based on the nuisance effect of tobacco smoke. See Nat'l Ass'n of Motor Bus Owners v.United States, 370 F. Supp. 408 (D.D.C. 1974) (three-judge court);Kimball v. Thompson, 70 F. Supp. 803, 808 (D.Neb. 1947).
[5] Cf. FDA v. Brown Williamson Tobacco Corp., 529 U.S. 120
(2000) (overturning effort by Food and Drug Administration to regulate marketing of cigarettes and other tobacco products under Food, Drug, and Cosmetic Act).
[6] For an example of a state law designed to preempt local regulation, see Fla. Stat. Ann. § 386.209 ("This part expressly preempts regulation of smoking to the state and supersedes any municipal or county ordinance on the subject").
[7] The remainder of the subparagraph in each of those sections lists certain types of businesses in which smoking is permitted notwithstanding any regulations of the Commissioner or Secretary. An exception applicable to the entire subparagraph, including the provision relating to private residences, states that smoking may be restricted or prohibited if the "proprietor of an establishment" restricts or prohibits smoking. B.R. § 2-105(d)(3); LE § 2-106
(c)(3); LE § 5-314 (c)(3).
[8] In adopting the 1994 regulations prohibiting smoking in enclosed workplaces, the Commissioner of Labor and Industry had observed that those regulations would apply "[t]o the extent that a person turns a portion of their home into a business and employs employees therein." 21:15 Md. Reg. 1336, 1351 (July 22, 1994). The 1995 legislation was evidently designed to narrow the scope of smoking prohibitions and to make it clear that smoking could not be prohibited in portions of a home where employees might be employed, as long as those places were "not open to the public for business purposes." 
[9] This conclusion is consistent with the interpretation given by this Office when the legislation was under consideration. See Letter of Assistant Attorney General Robert A. Zarnoch to the Honorable Christopher J. McCabe (March 9, 1995); Letter of Assistant Attorney General Richard E. Israel to Thomas Lewis, Esquire (March 14, 1995). The Court of Appeals currently has under advisement the question whether this statute preempts a local Board of Health regulation that bans smoking in eating and drinking establishments. Montgomery County v. Anchor Inn SeafoodRestaurant, September Term 2000, No. 91. 
[10] The Court stated that for purposes of determining whether a subjective expectation of privacy is reasonable, "there is a ready criterion, with roots deep in the common law, of the minimal expectation of privacy that exists, and that is acknowledged to be reasonable."533 U.S. at 34. The Court declined to limit the prohibition on warrantless thermal imaging to "intimate details," as wrong in principle and impractical in application. Id. at 38.
[11] Indeed, there is a countervailing argument that the emission of tobacco smoke that travels in a harmful or annoying quantity to a neighboring residence interferes with the neighbor's privacy and justifies State interference. See Rowan v. United States Post OfficeDep't, 397 U.S. 728, 736-38 (1970) (recognizing "the very basic right to be free from sights, sounds, and tangible matter we do not want,"and reaffirming the "ancient concept that `a man's home is his castle,'" in holding that a vendor has no constitutional or other right to send unwanted material into the home of another); Reeves v. McConn,631 F.2d 377, 384 (5th Cir. 1980) (interest of a citizen in privacy and tranquility within the home is sufficient to justify reasonable and content-neutral municipal restrictions on the use of sound amplification equipment).
 *Page 177