(No. 46413.—▮▮▮▮)

ILLINOIS COAL OPERATORS ASSOCIATION, Petitioner, v. THE POLLUTION CONTROL BOARD *et al.*, Respondents.

*Opinion filed November 27, 1974.*

306

Lord, Bissell & Brook, of Chicago (R. R. McMahan and Stephen M. Murray, of counsel), for petitioner.

William J. Scott, Attorney General, of Chicago (George W. Wolff, Sheldon J. Plager, Roger W. Findley, and Russell R. Eggert, of counsel), for respondents.

MR. JUSTICE WARD delivered the opinion of the court:

The Illinois Institute for Environmental Quality, which was created by the Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1006), under the authority of the Act formed a Task Force on Noise in 1971 to draft suggested standards to be used for the regulation of noise. The suggestions of the Task Force, the personnel of which included members of the faculty of the University of Illinois in law, engineering and physiology and of a national accoustical consulting firm, were filed with the Illinois Pollution Control Board (the Board) early in 1972. Between June 1972 and May 1973 the Board conducted 16 public hearings throughout the State to consider the proposed regulations. The petitioner here, the Illinois Coal Operators Association, an unincorporated association of 11 coal-mining companies in Illinois, participated and offered evidence at the hearings. In July 1973 the Board adopted regulations to govern environmental noise. The Board considered that environmental noise comes from (1) stationary or "property line" sources; (2) ground transportation sources; (3) construction site sources; (4) airport sources. The regulations which were adopted concerned themselves only with category 1, stationary or "property line" sources. The respondents, the Illinois Environmental Protection Agency and the Illinois Pollution Control Board, have stated that regulations are being prepared for categories 2, 3 and 4 and at a later date those regulations will be announced.

The petitioner filed a request under the provisions of sections 29 and 41 of the Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, pars. 1029, 1041) in the appellate court for a review of regulations which had been

promulgated. These provisions state that any person "adversely affected or threatened by any rule or regulation of the Board may obtain a determination of the validity or application of such rule or regulation" by a petition for review. (Ill. Rev. Stat. 1971, ch. 111½, par. 1029.) The authority of the petitioner to proceed under this section has not been questioned by the respondents and we need not discuss it. We granted the petitioner's motion to transfer the case to this court under Rule 302(b). 50 Ill.2d R. 302(b).

The first contention in the petition is basically that the Board in Rule 102 of Chapter 8 of its rules and regulations (hereafter Rule 102) has exceeded the authority to regulate which was conferred on it by the legislature.

The Board was authorized by the Environmental Protection Act to promulgate procedural and substantive regulations to govern refuse disposal and air, water, land and noise pollution. Ill. Rev. Stat. 1971, ch. 111½, par. 1027.

Referring to pollution by noise, section 24 of the Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1024) provides:

> "No person shall emit beyond the boundaries of his property any noise that unreasonably interferes with the enjoyment of life or with any lawful business or activity, so as to violate any regulation or standard adopted by the Board under this Act."

Section 25 (Ill. Rev. Stat. 1973, ch. 111½, par. 1025), after authorizing the Board to adopt regulations prescribing "limitations on noise emissions beyond the boundaries of the property of any person," states: "The Board shall, by regulations under this section, categorize the types and sources of noise emissions that unreasonably interfere with the enjoyment of life, or with any lawful business, or activity, and shall prescribe for each such category the maximum permissible limits on such noise emissions."

Rule 102 of the Board, which the petitioner questions, provides:

"No person shall cause or allow the emission of sound beyond the boundaries of his property so as to cause noise pollution in Illinois, or so as to violate any provision of this Chapter [these regulations] or the Illinois Environmental Protection Act."

Rule 101(j) of Chapter 8 of the Board's rules and regulations defines noise pollution:

"The emission of sound that unreasonably interferes with the enjoyment of life or with any lawful business or activity."

The contention is that the Board is not only attempting through Rule 102 to regulate emissions of sound which unreasonably interfere with the enjoyment of life or with any lawful business or activity, as the statute (section 24) authorizes the Board to do, but also is attempting to regulate any other emission of sound which the Board may choose to prohibit.

However, Rule 102 is not, as a reasonable matter, to be given the restricted and isolated reading the petitioner would give it. The prohibition of section 24 is against causing noise emissions that unreasonably interfere with the enjoyment of life or with a lawful business or activity. The basic violation was to be unreasonably interfering through noise with the enjoyment of life or lawful activity, and it is clear that it was contemplated by the legislature that the Board would adopt standards or regulations to define or identify noise emissions which constituted such unreasonable interference. This is evidenced by section 25, which specifically states that the Board shall categorize the types and sources of noise emissions which unreasonably interfere with the enjoyment of life or lawful business activity and calls for the Board to prescribe maximum permissible limits for noise emissions.

While Rule 102 is poorly composed, we do not consider that it should be read as the petitioner would have us do. We read it as prohibiting emissions that unreasonably interfere with life or activities, whether such emissions may be said to violate section 24 generally or

whether they are emissions which more specifically may be said to violate a particular Board regulation (as referred to in section 24) by exceeding, for example, the maximum permissible decibels which may be by a regulation emitted to a certain classification of land. The final disjunctive part of Rule 102—"or the Illinois Environmental Protection Act"—must be regarded as simple surplusage. It is clear that the Board's enforcement authority is limited to cases of noise that unreasonably interfere with the enjoyment of life or with any lawful business or activity and that the Board in its regulations could not go beyond this boundary. It would be unreasonable to say the Board sought to violate the clearly announced limitations set out in section 25 on its authority to regulate.

Another complaint of the petitioner is that the Board has violated the legislative intention in arbitrarily imposing sound-emission limitations without regard to whether such emissions in actuality would unreasonably interfere with the enjoyment of life or any lawful business or activity. That generally stated complaint is to be answered by observing that administrative action taken under statutory authority will not be set aside unless it has been clearly arbitrary, unreasonable or capricious. (*Richards v. Board of Education,* 21 Ill.2d 104; *People ex rel. Stephens v. Collins,* 35 Ill.2d 499; *People ex rel. Polen v. Hoehler,* 405 Ill. 322; *Skokie Federal Savings and Loan Ass'n v. Savings and Loan Board,* 88 Ill. App. 2d 373; 1 F. Cooper, State Administrative Law 259 (1965); 2 Cooper 791.) The Board adopted its regulations only after their having been proposed by the qualified group which composed the Task Force on Noise and its consultants and only after 16 public hearings had been held by the Board extending for a period of almost a year. We cannot say that the rules which resulted from this study are clearly arbitrary, unreasonable or capricious.

The petitioner argues, too, that one of the Board's regulations, Rule 208(d) of Chapter 8 of the rules and

regulations (hereafter Rule 208(d)), violates the equal protection clauses of both the Constitution of the United States and the Constitution of Illinois. It also violates our constitution's prohibition of special legislation, they say, in that the regulation exempts sounds emitted by construction equipment from the operation of the regulations, while there is no exemption for identical equipment used in mining.

The legislature may create legislative classifications, for "perfect uniformity of treatment of all persons is neither practical nor desirable." (*Grasse v. Dealer's Transport Co.,* 412 Ill. 179, 193.) A classification must not, however, be arbitrary, and it must be based on a rational difference of condition or situation existing in the persons or objects upon which the classification rests. (*Begich v. Industrial Com.,* 42 Ill.2d 32, 35.) This was also expressed by this court in *People ex rel. County of Du Page v. Smith,* 21 Ill.2d 572, 578, when it was said: "If there is a reasonable basis for differentiating between the class to which the law is applicable and the class to which it is not, the General Assembly may constitutionally classify persons and objects for the purpose of legislative regulation or control, and may pass laws applicable only to such persons or objects." Also, there must be a reasonable basis for the classification in view of the objects and purposes to be accomplished by the statute. (*Morey v. Doud,* 354 U.S. 457, 1 L. Ed. 2d 1485, 77 S. Ct. 1344; *McDonald v. Board of Election Com'rs,* 394 U.S. 802, 809, 22 L. Ed. 2d 739, 745, 89 S. Ct. 1404; *Chicago Allis Mfg. Corp. v. Metropolitan Sanitary District,* 52 Ill.2d 320, 327, 331; *Bridgewater v. Hotz,* 51 Ill.2d 103, 111; *Thillens, Inc. v. Morey,* 11 Ill.2d 579, 594; *Heimgaertner v. Benjamin Electric Manufacturing Co.,* 6 Ill.2d 152, 163.) Too, a person who attacks the validity of a classification has the burden of demonstrating that the classification is unreasonable or arbitrary. (*People v. Palkes,* 52 Ill.2d 472, 477.) We consider that this burden has not been met by the

petitioner here.

At the public hearings conducted by the Board, representatives of the petitioner testified to a great similarity between many of the activities and equipment in surface mining and construction and said it was unreasonable to distinguish between the two industries. The Environmental Protection Agency, however, argued before the Board that the similarity of some equipment was the only similarity existing between the two industries. We consider there are significant differences upon which a classification can be based. The record shows that construction work in general involves, in contrast to mining, distinctly temporary activities. Also, there was evidence presented at the hearings that over one-half of the construction activity in Illinois takes place in populous Cook County and that surface coal mining is ordinarily conducted on large tracts of land in rural areas. Only some of .the equipment used in construction is used in surface mining. The two industries differ markedly in the number of persons employed. There is evidence that the mining industry in Illinois employs approximately 10,000 miners and construction provides employment for over 200,000 persons.

The respondents also point out that Rule 208(d) provides only for an exemption from the numerical limits of the noise regulations in Rules 202 to 207, inclusive, of Chapter 8. All persons, including those in the construction business, remain subject to Rules 102 and 101(j) of Chapter 8 of the Board's rules and regulations, and the respondents say that this limited exemption of the construction industry will end upon the adoption of construction-noise regulations which are now being considered.

We would also remark that so far as legislative classification is concerned, it has been recognized that evils in the same field may be of different dimensions and reform may take place one step at a time. The legislature

may address itself to one stage of a problem and not take action at the same time as to other phases. *Williamson v. Lee Optical of Oklahoma, Inc.,* 348 U.S. 483, 489, 99 L. Ed. 563, 75 S. Ct. 461; *McDonald v. Board of Election Com'rs,* 394 U.S. 802, 809, 811, 22 L. Ed. 2d 739, 89 S. Ct. 1404; *Chicago Allis Manufacturing Co. v. Metropolitan Sanitary District,* 52 Ill.2d 320, 331; *W. F. Hall Printing Co. v. Environmental Protection Agency,* 16 Ill. App. 3d 864.

This exemption of construction work does not appear to be unique. The respondents note that proposed environmental regulations of the State of New York regarding noise from stationary sources would be applied to mining and quarrying noise but sounds that originate on construction sites would be exempted from the regulations. A 1973 publication of New York's Department of Environmental Conservation is quoted: "Information received at a public hearing has shown that regulation of construction noise involves several complex considerations. Because construction is a temporary activity and because the contractor is generally limited in his ability to obtain quieter equipment, a separate regulation is being developed for construction."

The final argument of the petitioner is that the Board's regulations do not adequately protect an existing land user against changes in the use of adjacent lands. A residence, for example, might be built on previously underdeveloped land next to land of an industrial land user. If that would be done, the petitioner says the adjacent industrial land user would be required to observe different and more stringent limits on noise emissions which might be "received" by the now residential property. It argues that it might be financially impossible or severely expensive for the first land user to comply with the new requirements.

The petitioner acknowledges that Rule 201(d) of Chapter 8 of the Board's rules and regulations provides:

> "A parcel or tract of land used as specified by SLUCM [Standard Land Use Code Manual of the U.S. Department of Transportation] Code 81 [agricultural uses], 83 [forestry activities], 91 [undeveloped, unused land], or 922 [nonreserve, undeveloped forests], when adjacent to Class B [commercial] or C [industrial] land may be classified similarly by action of a municipal government having zoning jurisdiction over such land. Notwithstanding any subsequent changes in actual land use, land so classified shall retain such B or C classification until the municipal government removes the classification adopted by it.

They recognize, too, that the Board has observed:

> "This provision was designed to reassure developers of 'B' or 'C' properties that they would not be subjected to development of adjacent properties that could entail noise restrictions beyond that originally contemplated at the time of original development."

They say, however, that the safeguard or protection provided land users by Rule 201(d) is illusory because in rural areas, where they principally operate, there seldom is zoning activity by local governments. The respondents, however, correctly note that the protection available under the rule does not depend upon the land of the land user being already zoned. The reference in the rule is to zoning jurisdiction.

There is a source of protection for the land user, too, from the statute's directing the Board to consider the "question of priority of location in the area involved" and the "social and economic value of the pollution source" in enforcement proceedings. (Ill. Rev. Stat. 1973, ch. 111½, par. 1033(c).) Too, the Act provides for the granting of variances when compliance with regulations "would impose an arbitrary or unreasonable hardship." Ill. Rev. Stat. 1973, ch. 111½, par. 1035.

We consider that the questions raised by the petitioner are without substantial validity, and the order of the Pollution Control Board is affirmed.

*Order affirmed.*