(No. 52161.-

ROCKFORD DROP FORGE CO. *et al.,* Appellants and Cross-Appellees, v. THE POLLUTION CONTROL BOARD, Appellee and Cross-Appellant.

*Opinion filed March 21, 1980.*

272

MORAN, J., took no part.

Ronald Butler, Gerald G. Saltarelli, Robert G. Foster, Robert E. English and Eugene W. Beeler, Jr., of Chicago (Winston & Strawn, of counsel), for appellants.

William J. Scott, Attorney General, of Springfield (George Wm. Wolff, and Russell R. Eggert, Assistant Attorneys General, of Chicago, of counsel), for appellee.

MR. JUSTICE WARD delivered the opinion of the court:

The appellants, 22 Illinois forging companies and the Forging Industry Association (the forging companies), filed a petition directly in the Appellate Court for the Second District under the provisions of the Environmental Protection Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1001 *et seq.*) to review rules adopted by the Pollution Control Board of the State of Illinois (the Board) for noise emissions from stationary, or "property line," sources. The rules were upheld by the appellate court (71 Ill. App. 3d 295), and we granted the forging companies' petition for leave to appeal. The Board has taken a cross-appeal.

The forging companies contended in the appellate court that the noise pollution provisions of the Environmental Protection Act (Ill. Rev. Stat. 1977, ch. 111½, pars. 1023 through 1025) were unconstitutional because of vagueness and improper delegation. The companies also asserted that the regulations exceeded the power granted the Board under the Act, which, according to the forging companies, confined the Board to the prevention of public nuisances. The companies asserted further that the regulations violated the equal protection clauses of the United States Constitution and the Constitution of Illinois because comparable rules had not been adopted for other sources of noise emissions. These claims are renewed on this appeal.

Two provisions of the Act are involved on this appeal. One is section 29 (Ill. Rev. Stat. 1977, ch. 111½, par. 1029), which provides:

> "Any person adversely affected or threatened by any rule or regulation of the Board may obtain a determination of the validity or application of such rule or regulation by petition for review under Section 41 of this Act."

The other is section 41 (Ill. Rev. Stat. 1977, ch. 111½, par. 1041), which reads as follows:

"Any party to a Board hearing, any person who filed a complaint on which a hearing was denied, any person who has been denied a variance or permit under this Act, and any party adversely affected by a final order or determination of the Board may obtain judicial review, by filing a petition for review within thirty-five days after entry of the order or other final action complained of, pursuant to the provisions of the "Administration Review Act," approved May 8, 1945, as amended and the rules adopted pursuant thereto, except that review shall be afforded directly in the Appellate Court for the District in which the cause of action arose and not in the Circuit Court. Review of any rule or regulation promulgated by the Board shall not be limited by this section but may also be had as provided in Section 29 of this Act.

No challenge to the validity of a Board order shall be made in any enforcement proceeding under Title XII of this Act as to any issue that could have been raised in a timely petition for review under this Section."

Before addressing the merits of the forging companies' claims, we consider two procedural issues. The first is the Board's contention that venue for this proceeding was not in the second appellate district, and that the court should have dismissed the petition or transferred the proceeding to the Appellate Court for the First District, in which, according to the Board, the action should have been brought.

The question now under consideration centers on that portion of section 41 which states that review shall be had "in the Appellate Court for the District in which the cause of action arose" (Ill. Rev. Stat. 1977, ch. 111½, par. 1041). The appellate court was of the opinion that the place where a cause of action arose was not clear, that it might be the district where the Board's headquarters were located or perhaps any district where one or more of the forging companies was located. The court noted that under the latter hypothesis a problem might arise since not all of the forging companies operated a plant within the second

district. The opinion stated that since the parties had not argued or briefed the question, however, the court would proceed on the assumption that the petition was properly before it.

The Board asserts that the petition should have been filed in the Appellate Court for the First District because the order adopting the rules was entered at a meeting held at the Board's Chicago office, and because it is the adoption of a rule which creates the cause of action. *Werner v. Illinois Central R.R. Co.* (1942), 379 Ill. 559, 565.

As the appellate court pointed out, the venue issue was not briefed or argued by the parties in that court, and it is not clear from the record before us that the Board pursued its objection there. A reversal of the judgment below on the ground that the venue was improper, moreover, would further delay the disposition of this suit and thus would delay as well the resolution of the constitutional challenges to the Act which are made here. For these reasons we do not decide whether the action should have been brought in the Appellate Court for the First District, as the Board contends.

The second procedural question concerns the appellate court's refusal to consider the forging companies' challenges to the validity of the Act. One justice of the appellate court dissented from this holding, and it is criticized not only by the companies but also by the Board, although the latter states in its brief that it did not contest the point below and "therefore takes no position on this issue in these proceedings."

Various objections to the rules governing noise emissions were rejected by this court in *Illinois Coal Operators Association v. Pollution Control Board* (1974), 59 Ill. 2d 305. The rules were also sustained in several decisions of the appellate court. (See *Laclede Steel Co. v. Pollution Control Board* (1976), 37 Ill. App. 3d 263; *Shell Oil Co. v. Pollution Control Board* (1976), 37 Ill. App. 3d 264; *Union Oil Co. v. Pollution Control Board* (1976), 43 Ill.

App. 3d 927; *Illinois State Chamber of Commerce v. Pollution Control Board* (1977), 49 Ill. App. 3d 954.) It does not appear that the validity of the Act was questioned in any of the foregoing cases, however, and hence the issue before us has not been passed upon.

The court below stated that the basis for its refusal to consider the forging companies' constitutional objections to the Act was that the court lacked jurisdiction to do so. The court reasoned that judicial review of a rule, as contrasted with an enforcement order, was authorized only by section 29 of the Act; that that section speaks only of the validity or application of a rule; and that an inquiry into the validity of a rule does not include a consideration of the validity of the statute under which the rule was promulgated.

We agree that but for section 29 there could be no review of rules issued by the Board. That is so because section 41, taken alone, provides for review under the Administrative Review Act, and section 2 of the latter statute provides for review only of "decisions" of an agency, a term which section 1 defines as excluding rules. Ill. Rev. Stat. 1977, ch. 110, pars. 264, 265. See Currie, *Rule Making Under the Illinois Pollution Law*, 42 U. Chi. L. Rev. 457, 473-75 (1975).

It does not follow, however, that consideration of the validity of the Act would be improper. On the contrary, as was said in *Oklahoma v. United States Civil Service Com.* (1947), 330 U.S. 127, 138-39, 91 L. Ed. 794, 803-04, 67 S. Ct. 544, 551: "Only if the statutory basis for an order is within constitutional limits can it be said that the resulting order is legal. To determine that question, the statutory review must include the power to determine the constitutionality [of the statute]."

Questions going to the validity of the Act have been entertained in proceedings for review of enforcement orders. (*City of Waukegan v. Pollution Control Board* (1974), 57 Ill. 2d 170; *City of Monmouth v. Pollution*

*Control Board* (1974), 57 Ill. 2d 482.) Such questions have also been held to be properly before the court upon review of orders issued under other statutes. An important reason is that a contrary practice would lead to piecemeal litigation. *Howard v. Lawton* (1961), 22 Ill. 2d 331, 333.

The appellate court sought to distinguish the foregoing decisions on the ground that the present proceeding was not an administrative review. (71 Ill. App. 3d 295, 297.) We disagree. Section 29 directs that the right of review which it confers shall be exercised by a petition under section 41. That section incorporates the provisions of the Administrative Review Act, except as to jurisdiction and venue, for which section 41 establishes different provisions. And of course the validity of a rule is judged on the basis of whether it is "clearly arbitrary, unreasonable or capricious," rather than whether it is contrary to the manifest weight of the evidence. *Illinois Coal Operators Association v. Pollution Control Board* (1974), 59 Ill. 2d 305, 310; *cf. Union Oil Co. of California v. Pollution Control Board* (1976), 43 Ill. App. 3d 927, 929-30; *Shell Oil Co. v. Pollution Control Board* (1976), 37 Ill. App. 3d 264, 269; *Illinois State Chamber of Commerce v. Pollution Control Board* (1977), 49 Ill. App. 3d 954, 959-60.

Although administrative review of rules promulgated under the Act may be something of a hybrid, we are not persuaded by the appellate court's holding that a challenge to the validity of the Act must be made by way of a separate declaratory judgment action in circuit court, particularly since the challenger may also wish to contest the validity of the rule itself. The appellate court's position would result in multiplicity of litigation and fragmentation of issues and would delay the enforcement of the Act.

Although we hold that the appellate court should have considered the objections to the validity of the Act, we do not reverse its judgment on that account, for we conclude that those objections are without merit. The first of them is that section 24 of the Act (Ill. Rev. Stat. 1977,

ch. 111½, par. 1024) is so vague and indefinite as to violate due process. Section 24, the violation of which is made a criminal offense by section 44 (Ill. Rev. Stat. 1977, ch. 111½, par. 1044), is as follows:

> "No person shall emit beyond the boundaries of his property any noise that unreasonably interferes with the enjoyment of life or with any lawful business or activity, so as to violate any regulation or standard adopted by the Board under this Act."

We do not inquire whether the phrase "unreasonably interferes with the enjoyment of life," standing alone, would be too vague to pass muster, for what is proscribed is conduct which violates any regulation or standard adopted by the Board. The forging companies' argument under this heading thus relates more properly to its next charge, which is that the Act makes an unconstitutional delegation of legislative power.

In the discussion of that question the forging companies do not identify the points at which they consider the Act vulnerable, and in the treatment of the point in their brief they fail to mention the recent decisions of *Stofer v. Motor Vehicle Casualty Co.* (1977), 68 Ill. 2d 361, *Thygesen v. Callahan* (1979), 74 Ill. 2d 404, and *Village of Riverwoods v. Department of Transportation* (1979), 77 Ill. 2d 130. In those decisions this court reappraised the constitutional limitations upon rule-making under a comprehensive regulatory statute, and adopted as the criteria of validity that the statute sufficiently identify the persons and activities subject to regulation, the harm sought to be prevented, and the general means intended to be made available to prevent the harm. (*Village of Riverwoods v. Department of Transportation* (1979), 77 Ill. 2d 130, 141-42.) It is plain without further discussion that the provisions of title VI (Ill. Rev. Stat. 1977, ch. 111½, pars. 1023 through 1025), including the legislative declaration, the definition of the acts prohibited, and the specification of permissible regulations, together with the provisions of section 27 of the Act (Ill. Rev. Stat.

1977, ch. 111½, par. 1027), amply satisfy constitutional requirements.

The forging companies also contend, somewhat inconsistently, that in adopting these rules the Board exceeded its powers. The thrust of the argument is that the Act permits the Board to limit noise emissions only to the extent that they would be actionable at common law under the doctrine of public nuisance, but that the regulations adopted are more stringent.

The companies' argument is bottomed on section 23 (Ill. Rev. Stat. 1977, ch. 111½, par. 1023), which states: "It is the purpose of this Title to prevent noise which creates a public nuisance." It is section 25, however (Ill. Rev. Stat. 1977, ch. 111½, par. 1025), which defines the Board's powers. It directs that the Board shall "categorize the types and sources of noise emissions that unreasonably interfere with the enjoyment of life, or with any lawful business, or activity, and shall prescribe for each such category the maximum permissible limits on such noise emissions." (Ill. Rev. Stat. 1977, ch. 111½, par. 1025.) The objectives stated in section 25 may reflect in general terms the same concerns as those which underlie the common law. The legislative purpose, however, was to vindicate those concerns through a comprehensive regulatory system. Such an approach might well be thought to require that noise be limited on the basis of an objective, quantitative standard, rather than by its qualitative impact upon a particular affected individual as would be done under the common law method. (*Cf. City of Monmouth v. Pollution Control Board* (1974), 57 Ill. 2d 482, 485.) We cannot say that the legislature contemplated that each regulation must be tailored to some common law decision on tort liability.

The forging companies' final contention is that the rules violate the equal protection clauses in that the Board has established four categories of noise emission—stationary sources, ground transportation sources, construction

site sources, and airport sources—but had adopted rules only for the first of these by 1973, and since that time has adopted additional rules only for vehicles on public highways.

This contention is largely disposed of by *Illinois Coal Operators Association v. Pollution Control Board* (1974), 59 Ill. 2d 305, 312-13, where the court stated: "The legislature may address itself to one stage of a problem and not take action at the same time as to other phases." The forging companies invite us to reconsider that decision in the light of the fact that as of the date when their petition for leave to appeal was filed the Board had still not promulgated regulations for all the other noise source categories.

The passage of time since *Illinois Coal Operators Association* was decided has in no way bolstered the forging companies' argument. Under section 28 of the Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1028) a rule cannot be adopted without a hearing, and as that case shows, such hearings are extensive and time-consuming. (See 59 Ill. 2d 305, 307.) Since 1975, moreover, an amendment to section 27 requires that hearings must also be held on the economic impact of new regulations. (1975 Ill. Laws 2460; Ill. Rev. Stat. 1977, ch. 111½, par. 1027(b).) It may be added that the Board's failure to regulate the field of noise in its entirety is due in part to the multiple and protracted proceedings which have been brought to review the stationary source regulations themselves.

The forging companies also assert that the standards governing noise emissions for vehicles on the highway are substantially less stringent than those for stationary sources. We have considered this objection, and we judge that the companies have not shown that the classification complained of is unreasonable or arbitrary. *Illinois Coal Operators Association v. Pollution Control Board* (1974), 59 Ill. 2d 305, 311-12.

For the reasons given in this opinion the judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE MORAN took no part in the consideration or decision of this case.