THE VILLAGE OF CARY, Petitioner, *v.* THE POLLUTION CONTROL
BOARD *et al.*, Respondents.

Second District No. 79-314

Opinion filed April 1, 1980.—Rehearing denied May 1, 1980.

Bernard V. Narusis, of Narusis & Narusis, of Cary, for petitioner.

William J. Scott, Attorney General, of Chicago, (Dean Hansell, Assistant Attorney General, of counsel), for respondents.

Mr. JUSTICE NASH delivered the opinion of the court:

Petitioner, the village of Cary, appeals from an order of the Illinois Pollution Control Board (hereinafter the Board) under sections 29 and 41 of the Illinois Environmental Protection Act (Ill. Rev. Stat. 1977, ch. 111½, pars. 1029, 1041) (hereinafter the Act) and pursuant to the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*) Cary seeks review of an order entered by the Board after hearing Cary's petition for a variance from compliance with the barium limitation standard established by Board Rule 304B(4) (Pollution Control Board Rules and Regulations, ch. 6, Public Water Supplies, Rule 304B(4)).

In the variance proceeding before the Board, Cary challenged the validity of the regulation, contending that it is not supported by either medical or scientific evidence and is thus arbitrary, capricious and unreasonable as applied to the public water supply of the village of Cary. The barium limitation standard established by the disputed regulation prohibits a barium concentration in excess of one part per million parts of water (1 mg/1) in a public water supply. Two of the three wells which serve the village of Cary exceed that limitation; one well pumps 460 gallons per minute containing 40 parts of naturally occurring barium per million parts water (4.0 mg/1), and another pumps 780 gallons per minute with 80 parts naturally occurring barium per million parts water (8.0 mg/1). Although the barium limitation regulation was first promulgated by the Board in 1975, the village has not undertaken the removal of barium from its water supply asserting the cost of doing so is prohibitive and that there is no evidence it is harmful.

When enforcement proceedings, as provided for in title 8 of the Act (Ill. Rev. Stat. 1977, ch. 111½, pars. 1030 to 1034), were threatened by the Illinois Environmental Protection Agency to require it to conform to the regulation, Cary filed its petition for variance in December 1977, pursuant to title 9 of the Act (Ill. Rev. Stat. 1977, ch. 111½, pars. 1035 to 1038). The petition requested that the barium standard not be applied against it for a period of five years, the maximum allowable term for a variance under

the Act. (Ill. Rev. Stat. 1977, ch. 111½, par. 1036(b); *Monsanto Co. v. Pollution Control Board* (1977), 67 Ill. 2d 276, 367 N.E.2d 684.) The hearing of this matter before the Board was continued from time to time by agreement of the parties while they waited for publication of the results of a scientific investigation being made of the effect of barium consumption conducted by the University of Illinois under the sponsorship of the United States Environmental Protection Agency. This study, the first made to consider whether or not barium might constitute a health hazard, was completed in 1979, and it concluded that no scientific evidence links higher levels of barium with any condition of ill-being considered in the study. Further, the study determined that no measurable correlation was scientifically possible between mortality rates and barium consumption in drinking water.

The hearing of Cary's petition was thereafter held by the Board on March 1, 1979, and the University of Illinois study, together with other evidence of health experts and a public health administrator, was introduced into evidence by Cary in support of its contention that there was no evidence that the barium standard had a medical or scientific basis or that naturally occurring soluble barium in drinking water was a health hazard. Cary urged that the barium regulation not be enforced against it as it was arbitrary and unreasonable on this basis. It requested the Board to grant the maximum variance from enforcement of the disputed regulation so that Cary could avoid the expenditure of many thousands of dollars in an effort to comply with the standard which, under the evidence presented, had no effect upon public health, welfare, or safety. In addition, the record discloses that the Illinois Environmental Protection Agency filed a recommendation with the Board in this case in which it concurred with Cary's assessment that the barium in its public water supply was harmless and recommended that the Board grant a variance relieving Cary from compliance with the standard for a maximum term. It noted, however, that:

> "In order to maintain at least as stringent a program of enforcement, including the granting of variance as set forth in the Federal Safe Water Drinking Act, and to thus retain eligibility for primary enforcement authority of the Federal program, the State cannot grant variances for problems * * * beyond January 1, 1981."

The Board thereafter entered an order granting Cary a six-month temporary variance and denied the five-year variance which it had requested. In addition, the temporary variance was conditioned upon submission to the Board, within 90 days, of detailed information which was to include an evaluation of the expense and the timetable necessary for Cary to meet the variance standard by the January 1, 1981, Federal

deadline; a laboratory analysis of the form of barium in its water supply; and an analysis of possible sources of revenue available to Cary to implement the necessary improvements to its water supply to bring it into compliance with the regulation. In reaching its determination the Board failed to pass upon the issue of the validity of the barium regulation, as urged by Cary, although it noted in its findings that the barium limitation contained in its regulation rested upon uncertain scientific data. The only evidence relating to the basis for, or validity of, the barium regulation seen in the record of this case is that introduced by Cary which we have described. Nor does this record disclose what data or evidence was considered by the Board in regulatory proceedings conducted by it pursuant to section 27 of the Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1027) when it adopted the barium standard.

In its appeal from the variance order Cary contends it was authorized by the Act to assert in the variance proceeding the invalidity of the barium regulation sought to be enforced against it. The Board, on the other hand, contends that the validity of its rules and regulations may not be raised in a variance proceeding and, as Cary did not seek judicial review of the disputed regulation under the Administrative Review Act within 35 days of its promulgation as provided in section 41 of the Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1041), the regulation may now only be brought to the attention of the Board pursuant to the provisions of section 28 of the Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1028).

There are essentially four issues presented for our consideration: (1) whether Cary waived the issue of the validity of Rule 304B(4) by failing to raise it in the variance proceeding; (2) whether the Board's order granting a temporary variance deprived Cary of standing to seek review; (3) whether Cary is barred from judicial review of the Board's order by failing to exhaust its administrative remedies; and (4) whether the validity of a substantive regulation of the Pollution Control Board may be challenged in a variance proceeding.

■■ The Board asserts first that Cary waived the question of the validity of the barium regulation by not raising it in the variance proceeding. While it is established that issues that have not been presented or passed upon in an administrative hearing will not be considered on review (*Armour-Dial, Inc. v. Pollution Control Board* (1978), 60 Ill. App. 3d 64, 376 N.E.2d 411), it is clear in this case that Cary based its petition for variance upon the contention that a barium regulation was arbitrary, capricious and unreasonable as being without a scientific or medical basis. (*Illinois Coal Operators Association v. Pollution Control Board* (1974), 59 Ill. 2d 305, 319 N.E.2d 782.) Although the Board failed to make any determination regarding the validity of its regulation it cannot now realistically contend the issue was not raised. In its findings of fact in support of the variance

order the Board noted that if Cary were denied use of the two wells which do not meet the barium standard, such denial would constitute an arbitrary and unreasonable hardship in view of the unknown health effects of barium ingestion in drinking water. This finding was made, apparently, in support of the six-month variance granted by the Board as section 35 of the Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1035) requires a finding that compliance with a Board rule or regulation would impose an arbitrary or unreasonable hardship before any variance may be granted. We conclude that the issue of the validity of the barium regulation was raised, albeit unresolved, in the hearing from which this appeal was taken. See *Armour-Dial, Inc. v. Pollution Control Board* (1978), 60 Ill. App. 3d 64, 376 N.E.2d 411; see also *Ming Kow Hah v. Stackler* (1978), 66 Ill. App. 3d 947, 383 N.E.2d 1264.

The Board also contends that Cary lacks standing to seek judicial review of its order as it was not "adversely effected or threatened" within the meaning of sections 29 and 41 of the Act (Ill. Rev. Stat. 1977, ch. 111½, pars. 1029 and 1041). Section 29 provides:

"Any person adversely affected or threatened by any rule or regulation of the Board may obtain a determination of the *validity or application* of such rule or regulation by petition for review under Section 41 of this Act." (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 111½, par. 1029.)

Section 41 provides in relevant part:

"Any party to a Board hearing, any person who filed a complaint on which a hearing was denied, any person who has been denied a variance or permit under this Act, and any party adversely affected by a final order or determination of the Board may obtain judicial review, * * * pursuant to the provisions of the 'Administrative Review Act,' * * * directly in the Appellate Court for the District in which the cause of action arose * * *. Review of any rule or regulation promulgated by the Board shall not be limited by this section but may also be had as provided in Section 29 of this Act.

No challenge to the validity of a Board order shall be made in any enforcement proceeding under Title XII of this Act as to any issue that could have been raised in a timely petition for review under this Section." Ill. Rev. Stat. 1977, ch. 111½, par. 1041.

While Cary did seek review of the variance order within 35 days of its entry as required by section 41, the Board argues that, nonetheless, as Cary was granted rather than denied a variance, it was not adversely affected by the Board's order. It is apparent, however, that Cary was not granted the relief which it sought from the Board, and which was within the Board's statutory discretion to grant; Cary sought to be relieved from

compliance with the disputed regulation for a period of five years but, instead, was granted only a six-month abatement of enforcement. In addition, the Board attached conditions to its order directed towards compliance by Cary with the disputed regulation. In these circumstances we are satisfied that Cary was adversely affected or threatened by the Board's order and has standing to seek its review. See *Illinois State Chamber of Commerce v. Pollution Control Board* (1977), 49 Ill. App. 3d 954, 364 N.E.2d 631; *Flinkote Co. v. Pollution Control Board* (1977), 53 Ill. App. 3d 665, 368 N.E.2d 984; *Lake County Contractors Association v. Pollution Control Board* (1973), 54 Ill. 2d 16, 294 N.E.2d 259; *Illinois Coal Operators Association v. Pollution Control Board* (1974), 59 Ill. 2d 305, 319 N.E.2d 782.

The Board next contends Cary may not seek judicial review of the disputed rule as it has failed to exhaust its administrative remedies. As we understand the Board's argument, it suggests that Cary could apply to it for a new variance, be protected thereby from application of Rule 304B(4), and have no further need to challenge its validity. In addition, the Board asserts that Cary could avail itself of the provisions of section 28 of the Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1028) to petition the Board for a State-wide amendment or repeal of the disputed regulation. It apparently concludes that, as Cary has not availed itself of these alternate remedies, the Board is not required to consider the validity of its regulation in the variance proceeding. Inexplicitly, the Board also argues that the exhaustion of remedies doctrine should be adhered to in this case in order to permit the Board, as an administrative agency, to utilize its expertise in environmental matters, as is the regulation of drinking water. (Ill. Rev. Stat. 1977, ch. 111½, pars. 1004, 1005.) It states that it has not yet had an opportunity to address the basis for the disputed regulation (which it nevertheless adopted) and to determine whether or not it is supported by scientific fact, and should be given an opportunity to do so. The Board further points out that the record of this case does not disclose any evidence pertaining to those matters which was considered by it when it enacted the regulation and consequently this court is without benefit of an adequate record to now consider its validity.

The exhaustion doctrine has application where a party seeks judicial review of action, or inaction, of an administrative agency without first exhausting its remedy before the agency. The rationale of the doctrine was set forth in *Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 358, 326 N.E.2d 737, 742:

"[T]he reasons for its existence are numerous: (1) it allows full development of the facts before the agency; (2) it allows the agency an opportunity to utilize its expertise; and (3) the aggrieved

party may succeed before the agency, rendering judicial review unnecessary."

It is also generally realized, however, that strict adherence to the rule could produce harsh and inequitable results and exceptions have been recognized where the purposes of the exhaustion doctrine would not be served. These exceptions include the following: (1) where a statute or regulation is attacked on its face or in its terms; (2) where multiple administrative remedies exist and one has been exhausted; (3) where irreparable harm will result from further pursuit of administrative remedies; and (4) where it would be patently useless to seek any relief before the administrative body. See *Bulk Terminals Co. v. Environmental Protection Agency* (1976), 65 Ill. 2d 31, 357 N.E.2d 430; *Northwestern University v. City of Evanston* (1978), 74 Ill. 2d 80, 383 N.E.2d 964.

While we would have little difficulty in finding that one or more of the exceptions are present under these circumstances (*cf. Landfill, Inc. v. Pollution Control Board* (1978), 74 Ill. 2d 541, 550, 387 N.E.2d 258, 604), in our view the Board has misapplied the exhaustion doctrine in this case. Cary seeks review in this court of an order of the Board entered in a variance proceeding, as it is authorized to do by virtue of sections 29 and 41 of the Act (see *Monsanto Co. v. Pollution Control Board* (1977), 67 Ill. 2d 276, 367 N.E.2d 684; see also *Howard v. Lawton* (1961), 22 Ill. 2d 331, 334-35, 175 N.E.2d 556, 558). The argument advanced by the Board that Cary may not seek judicial review of the order as it may re-petition for a new variance falls by its own weight; if that principle were to be added to the exhaustion doctrine there would be few administrative decisions subject to review. Nor are we persuaded that the legislature intended section 28 of the Act to be considered as an administrative remedy which must be undertaken by a party to a variance proceeding before seeking judicial review. Section 28 provides a general procedure whereby proposals relating to the adoption, amendment or repeal of substantive regulations may be presented to the Board if supported by a petition signed by at least 200 persons. If the Board then finds that the proposal meets other statutory requirements it is required to commence public regulatory hearings to consider the proposal.

■ We conclude that judicial review of an order entered by the Pollution Control Board in a variance proceeding will not be limited by the strained application of the exhaustion doctrine advanced in this case. Ill. Rev. Stat. 1977, ch. 111½, pars. 1029, 1041; *R. E. Joos Excavating Co. v. Pollution Control Board* (1978), 58 Ill. App. 3d 309, 311, 374 N.E.2d 486, 488-89.

We then reach the primary issue presented by this appeal, that is to say, whether the validity of the Pollution Control Board regulation, as applied to Cary, may be challenged in a variance proceeding. Neither

party has submitted a relevant case in which the question has been considered by a reviewing court. Cary argues it is axiomatic that an arbitrary, capricious or unreasonable regulation is constitutionally infirm and may not be enforced against it. The Board asserts that as Cary did not seek administrative review of the barium regulation within 35 days after its promulgation, it can now only petition the Board for a State-wide review of the regulation pursuant to section 28 of the Act and cannot dispute its validity in a variance proceeding.

The Board advanced a similar argument in *Central Illinois Public Service Co. v. Pollution Control Board* (1976), 36 Ill. App. 3d 397, 344 N.E.2d 229, *appeal denied* (1976), 63 Ill. 2d 555, where it contended that a hearing before the Board to contest the denial of a permit by the Environmental Protection Agency (Ill. Rev. Stat. 1977, ch. 111½, par. 1040) was not a proper proceeding in which to challenge the constitutionality of water rules promulgated by the Pollution Control Board. In that case, the Board cited sections 29 and 41 contending that the direct review proceeding brought pursuant to those sections within 35 days of promulgation of a rule or regulation was the appropriate remedy by which one may seek relief from an allegedly unconstitutional Board regulation. The Board also suggested, as it does here, that section 28 provides the exclusive procedural remedy to one who has failed to seek direct review within 35 days of promulgation of a rule or regulation.

The appellate court rejected these arguments and concluded that the constitutionality of a Board regulation could properly be raised in a hearing to contest the denial of a permit (*e.g., Central Illinois Public Service Co. v. Pollution Control Board* (1976), 36 Ill. App. 3d 397, 403, 344 N.E.2d 229, 233). It reasoned that sections 29 and 41 of the Act did not preclude alternate means to challenge the constitutionality of Board rules as the legislature did not intend a proceeding brought within 35 days of promulgation under sections 29 and 41 to be the exclusive remedy by which one may seek relief from an allegedly invalid Board regulation. It also noted that no section of the Environmental Protection Act provides that remedies are limited to those set forth within the Act. Further, the court dismissed the argument that section 28 of the Act precluded other methods of challenging the constitutionality of a rule or regulation.

A similar conclusion was reached in *Commonwealth Edison Co. v. Pollution Control Board* (1974), 25 Ill. App. 3d 271, 323 N.E.2d 84, *aff'd in part, rev'd in part* (1976), 62 Ill. 2d 494, 343 N.E.2d 459. The Pollution Control Board has adopted substantive rules governing the emission rates of various pollutants into the air. Pursuant to sections 29 and 41 of the Act, Commonwealth Edison sought appellate review of certain of the rules which it contended were arbitrary and unreasonable as applied to it. The court rejected Commonwealth's "as applied" argument, noting that those

substantive rules were promulgated for general, not special, application, and, that in doing so the Board cannot be expected to research, evaluate and make allowance for every special, unusual or unique problem involving every producer of electrical energy. It noted:

> "Where one fails to challenge the rules generally and instead seeks to relax their enforcement against him exclusively due to arbitrary and unreasonable hardship, the legislature has determined that the appropriate remedy is for the aggrieved party to seek a variance in accordance with Title IX of the Act. If this is denied, the aggrieved can petition to this court for review based on the record at that proceeding." (25 Ill. App. 3d 271, 281, 323 N.E.2d 84, 90.)

It was also noted by D. Currie in *Rulemaking Under The Illinois Pollution Law*, 42 U. Chi. L. Rev. 457, 475 (1975) that "the avenue for challenging the validity of a regulation as applied to particular facts is to petition for variance * * *." See *Landfill, Inc. v. Pollution Control Board* (1978), 74 Ill. 2d 541, 387 N.E.2d 258.

■ In our view it is manifestly appropriate that a regulation which is asserted to be arbitrary, unreasonable or capricious as applied to a party be first considered by the Pollution Control Board when raised in a variance proceeding (see *Monsanto Co. v. Pollution Control Board* (1977), 67 Ill. 2d 276, 288-91, 367 N.E.2d 684, 689-90), and no section of the Environmental Protection Act provides otherwise. We conclude that the issue of the validity of a Board regulation as applied to a party may be raised in a variance proceeding and that direct review of the order thereafter entered may be sought pursuant to sections 29 and 41 of the Act.

In this case, however, the Board failed to consider the issue of the validity of its Rule 304B, as applied to Cary, and the record is insufficient for this court to review the order. (*Commonwealth Edison Co. v. Pollution Control Board* (1976), 62 Ill. 2d 494, 503, 343 N.E.2d 459, 465; *Ashland Chemical Co. v. Pollution Control Board* (1978), 64 Ill. App. 3d 169, 171, 381 N.E.2d 56, 58; *Rockford Drop Forge Co. v. Pollution Control Board* (1980), 79 Ill. 2d 271, 402 N.E.2d 602.) Accordingly, we reverse the order entered by the Pollution Control Board and remand this cause to it for further hearing pursuant to title 9 of the Act. Ill. Rev. Stat. 1977, ch. 111½, pars. 1035 to 1038.

■ When the validity of a regulation has been challenged, as in this case, the Board may properly consider the evidence received by it when it adopted or repromulgated the regulation pursuant to title 7 of the Act (Ill. Rev. Stat. 1977, ch. 111½, pars. 1026 to 1029), and that evidence should be made a part of the record of the variance hearing for purposes of judicial review. The Board will also consider the evidence presented to it in the

initial variance hearing and any other relevant evidence offered by Cary or other interested parties relating to the disputed regulation.

For the foregoing reasons, the variance order entered by the Board is vacated and this cause is remanded to the Board for further proceedings consistent with the views expressed in this opinion.

Order vacated and cause remanded.

SEIDENFELD, P. J., and WOODWARD, J., concur.