(No. 61630.—

THE CHICAGO NATIONAL LEAGUE BALL CLUB, INC., Appellant, v. JAMES R. THOMPSON, Governor, *et al.*, Appellees.

*Opinion filed October 3, 1985.*

Don H. Reuben, William J. Campbell, Jr., Samuel Fifer, Steven A. Weiss and Eileen A. Kamerick, of Reuben & Proctor, of Chicago, and Lawrence Gunnells, of Chicago, for appellant.

James D. Montgomery, Corporation Counsel, of Chicago (Philip L. Bronstein, Mary K. Rochford and Lynn K. Mitchell, of counsel), for appellee City of Chicago.

Neil F. Hartigan, Attorney General, of Springfield (Jill Wine-Banks, Solicitor General, and Michael J. Hayes and Russell R. Eggert, of Chicago, of counsel), for appellee Governor Thompson.

Alan R. Borlack, of Chicago (Malcolm H. Brooks, Stewart H. Diamond, Robert J. Krull and Richard M. Lipton, of counsel), for intervenor-appellee Lake View Citizens Council.

JUSTICE WARD delivered the opinion of the court:

The Chicago National League Ball Club, Inc., is a corporation which owns and operates the Chicago Cubs, the major league baseball team, and the Cubs' home ball park, Wrigley Field. On December 19, 1984, the corporation (the Cubs) filed a complaint in the circuit court of Cook County seeking a declaratory judgment that a 1982 amendment to the Environmental Protection Act (Ill. Rev. Stat. 1983, ch. 111½, par. 1025) and a Chicago city ordinance (Chicago Municipal Code sec. 104.1—14.1) violate the separation-of-powers constitutional provisions, the State and Federal assurances of due process and

equal protection (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, sec. 2), and the special-legislation clause of the Constitution of Illinois (Ill. Const. 1970, art. IV, sec. 13). The Cubs asked that the Governor of Illinois, James R. Thompson, be enjoined from enforcing the statutory amendment, which makes certain nighttime professional sporting events subject to the nighttime-noise-emission regulations of the Pollution Control Board, against Wrigley Field, and the city of Chicago from enforcing the ordinance, which prohibits night athletic contests and other amusements at certain stadia, against the Cubs' ball park. The Lake View Citizens Council (LVCC), a nonprofit corporation composed of individuals who reside and certain organizations which are active in the community surrounding Wrigley Field, was granted leave to intervene as a defendant in support of the statute and ordinance. On March 25, 1985, the circuit court, after argument on motions by the Cubs and by the LVCC for judgment on the pleadings, held the statute and ordinance to be reasonable exercises of the police power. The court granted the motion of defendant-intervenor LVCC and entered judgment for the Governor, the city of Chicago and the LVCC. We allowed motions of LVCC and the city for a direct appeal to this court under our Rule 302(b) (87 Ill. 2d R. 302(b)).

The statute, which amends title VI, section 25, of the Enviromental Protection Act, provides:

"The [Pollution Control] Board shall, by regulations under this Section, categorize the types and sources of noise emissions that unreasonably interfere with the enjoyment of life, or with any lawful business, or activity, and shall prescribe for each such category the maximum permissible limits on such noise emissions. ***

    ***

No Board standards for monitoring noise or regulations prescribing limitations on noise emissions shall ap-

ply to any organized amateur or professional sporting activity except as otherwise provided in this Section. Baseball, football or soccer sporting events played during nighttime hours, by professional athletes, in a city with more than 1,000,000 inhabitants, in a stadium at which such nighttime events were not played prior to July 1, 1982, shall be subject to nighttime noise emission regulations promulgated by the Illinois Pollution Control Board." Ill. Rev. Stat. 1983, ch. 111½, par. 1025.

The provisions of the Chicago ordinance are:

"It shall be unlawful for any licensee or other person, firm, corporation or other legal entity to produce, present or permit any other person, firm, corporation, or other legal entity to produce or present any athletic contest, sport, game or any other amusement as defined in Chapter 104, if any part of such athletic contest, sport, game or any other amusement as defined in Chapter 104 takes place between the hours of 8:00 p.m. and 8:00 a.m., and is presented in a stadium or playing field which is not totally enclosed and contains more than 15,000 seats where any such seats are located within 500 feet of 100 or more dwelling units." Chicago Municipal Code sec. 104.1—14.1.

The Cubs challenge the constitutionality of the statute, apparently considering that night baseball games at Wrigley Field would violate the nighttime-noise-emission regulations of the Pollution Control Board. Those regulations are codified in the Illinois Administrative Code. (35 Ill. Adm. Code sec. 901.) The parties, however, are agreed that the ordinance would have the effect of prohibiting night games at Wrigley Field. Wrigley Field is located on the north side of Chicago in the Lake View area. The park is bordered by Sheffield, Waveland, Seminary, Addison and Clark streets. It was built in 1914 and has served as the exclusive home playing field of the Chicago Cubs since 1926. It is an open-air ball park with a seating capacity of slightly over 37,000, and it is the only park in the major leagues that, because it does not

have lights, does not have night games. In the 1984 season, the Cubs played 81 games at Wrigley Field.

The area surrounding Wrigley Field is predominately residential, with some light industry to the south and west of the ball park. Most of the buildings in the area are multi-unit dwellings, which gives Lake View a highly concentrated population. There are no expressways in close proximity to Wrigley Field to accommodate the influx of spectators on days when games are played at the field, and there are few off-street parking facilities in the area. In general, only the neighborhood streets are available for parking.

The Cubs first argue that the statute and ordinance violate the separation-of-powers principle and deprive the Cubs of their right to due process by "declaring as law the conclusive presumption that night baseball at Wrigley Field alone constitutes a private nuisance." The Cubs say that this determination should only be made by means of a civil suit where allegations of a private nuisance would be brought by an aggrieved party, and the Cubs given rights to discovery, cross-examination and an opportunity to defend.

It is clear that the legislature has broad discretion to determine not only what the public interest and welfare require, but to determine the measures needed to secure such interest. (*People v. McCarty* (1984), 86 Ill. 2d 247, 253; *Tometz v. Board of Education* (1968), 39 Ill. 2d 593, 600; *Thillens, Inc. v. Morey* (1957), 11 Ill. 2d 579, 593.) Here the legislature amended section 25 of the Environmental Protection Act to establish guidelines for protecting the interests, including property interests, of residents who live near stadia from intolerable noise from nighttime sporting events. In *Rockford Drop Forge Co. v. Pollution Control Board* (1980), 79 Ill. 2d 271, this court stated:

"The objectives stated in section 25 may reflect in general terms the same concerns as those which underlie the common law. The legislative purpose, however, was to vindicate those concerns through a comprehensive regulatory system. Such an approach might well be thought to require that noise be limited on the basis of an objective, quantitative standard, rather than by its qualitative impact upon a particular affected individual as would be done under the common law method." 79 Ill. 2d 271, 280. See also *Illinois Coal Operators Association v. Pollution Control Board* (1974), 59 Ill. 2d 305.

The city of Chicago as well has, under the home rule provisions, the constitutional authority to regulate, through the police power, for the protection of the public health, safety, morals and welfare. (Ill. Const. 1970, art. VII, sec. 6(a).) Too, the city council has been given the specific statutory authority to define and abate public nuisances. Ill. Rev. Stat. 1983, ch. 24, pars. 11—60—2, 21—20.

The Cubs contend also that the classifications made by the legislature and city council do not define a public nuisance. They say that because the enactments apply only to Wrigley Field, the classifications are a legislative attempt to correct a private nuisance. The determination of whether land use constitutes a private nuisance, and whether the nuisance should be abated, the Cubs argue, are judicial questions. It is true that a private nuisance is a civil wrong involving a disturbance of an individual's rights and that its abatement rests with the person or persons whose rights have been disturbed. A private nuisance, however, that interferes with public rights can also constitute a public nuisance. *Village of Wilsonville v. SCA Services, Inc.* (1981), 86 Ill. 2d 1, 21-22; Prosser, Torts sec. 88, at 572-73 (4th ed. 1971).

The enactments here were within the power and judgment of the legislature and city council. They were designed and enacted for the proper purpose of provid-

ing against a specific public nuisance and protecting the public against that nuisance.

In a related argument the Cubs contend that Wrigley Field is the only stadium affected by the statute and ordinance, and therefore the enactments violate the State and Federal equal protection clauses and the provision of the Constitution of Illinois prohibiting special legislation. They say that the legislative classifications serve to impose a burden on Wrigley Field but, contrary to the constitutional guarantees, do not subject other sports and entertainment enterprises to the same restrictions.

To support this contention, the Cubs would have us consider comments made in the legislature and city council which the Cubs say sustain their claim that the motive for enacting the statute and ordinance was to prohibit night games at Wrigley Field only and not at other stadia or parks. The contention, however, even if gratuitously assumed to be true, does not have legislative relevance. The plaintiff does not charge that either enactment is ambiguous and the legislative intention unclear. When the language of a statute or ordinance is clear courts will give effect to the legislation without resort to unnecessary means of statutory interpretation, such as comments by legislators. *People v. Singleton* (1984), 103 Ill. 2d 339, 341.

To be constitutional, the Cubs argue, the enactments would have to apply equally to all stadia in the State and not have exclusive application to Wrigley Field. But, of course, the equal protection clauses of our constitution and of the Constitution of the United States do not require uniform treatment in legislative classifications for all persons. (*City of New Orleans v. Dukes* (1976), 427 U.S. 297, 49 L. Ed. 2d 511, 96 S. Ct. 2513; *Friedman & Rochester, Ltd. v. Walsh* (1977), 67 Ill. 2d 413, 418.) That other stadia in the State might have been, but were not, affected by the legislation is not decisive on whether the

legislation was intended to apply to Wrigley Field only, particularly when any stadia constructed in the future will have to comply with the legislation. The legislature need not choose between legislating against all evils of the same kind or not legislating at all. Instead it may choose to address itself to what it perceives to be the most acute need. (*Tometz v. Board of Education* (1968), 39 Ill. 2d 593, 601-02; *Rockford Drop Forge Co. v. Pollution Control Board* (1980), 79 Ill. 2d 271, 281.) An entire remedial scheme will not be invalidated " 'simply because it failed, through inadvertence or otherwise, to cover every evil that might conceivably have been attacked.' " *Friedman & Rochester, Ltd. v. Walsh* (1977), 67 Ill. 2d 413, 421-22, quoting *McDonald v. Board of Election Commissioners* (1969), 394 U.S. 802, 809, 22 L. Ed. 2d 739, 746, 89 S. Ct. 1404, 1409.

The provision in the Constitution of Illinois prohibiting special legislation states: "The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter of judicial determination." (Ill. Const. 1970, art. IV, sec. 13.) Special legislation confers a special benefit or privilege on a person or group of persons to the exclusion of others similarly situated. It discriminates in favor of a select group without a sound, reasonable basis. (*Fireside Chrysler-Plymouth, Mazda, Inc. v. Edgar* (1984), 102 Ill. 2d 1, 4 citing *Illinois Polygraph Society v. Pellicano* (1980), 83 Ill. 2d 130, 137.) A denial of equal protection, on the other hand, is different. It is an arbitrary and invidious discrimination that results when government withholds from a person or class of persons a right, benefit or privilege without a reasonable basis for the governmental action. (*Jenkins v. Wu* (1984), 102 Ill. 2d 468, 477.) Legislation which confers a benefit on one class and denies the same to another may be attacked both as special

legislation and as a denial of equal protection (*Wilson v. All-Steel, Inc.* (1981), 87 Ill. 2d 28), but under either ground for challenge it is the duty of courts to decide whether classifications are unreasonable (*Illinois Polygraph Society v. Pellicano* (1980), 83 Ill. 2d 130). Though the constitutional protections involved are not identical, a claim that the special-legislation provision has been violated is generally judged by the same standard that is used in considering a claim that equal protection has been denied. *Illinois Housing Development Authority v. Van Meter* (1980), 82 Ill. 2d 116, 123; *Friedman & Rochester, Ltd. v. Walsh* (1977), 67 Ill. 2d 413, 422.

Unless legislation operates to the disadvantage of a suspect classification or infringes upon a fundamental right, the legislation, to be upheld as constitutional, must simply bear a rational relationship to a legitimate governmental interest. (*Illinois Housing Development Authority v. Van Meter* (1980), 82 Ill. 2d 116, 119-20; *San Antonio Independent School District v. Rodriguez* (1973), 411 U.S. 1, 36 L. Ed. 2d 16, 93 S. Ct. 1278; *Dandridge v. Williams* (1970), 397 U.S. 471, 25 L. Ed. 2d 491, 90 S. Ct. 1153.) It is clear that in the exercise of the police power, government may act to regulate, restrain or prohibit that which is harmful to the public welfare even though the regulation, restraint or prohibition might interfere with the liberty or property of an individual. (*People v. Warren* (1957), 11 Ill. 2d 420, 424-25; *City of Carbondale v. Brewster* (1979), 78 Ill. 2d 111.) There is a presumption in favor of the validity of any legislation, including of course a legislative act enacted under the police power. (*People v. Brown* (1983), 98 Ill. 2d 374; *Illinois Gamefowl Breeders Association v. Block* (1979), 75 Ill. 2d 443, 453.) The burden of showing legislation to be an unreasonable exercise of the police power is on the party challenging it. (*Tometz v. Board of Education* (1968), 39 Ill. 2d 593.) When a classification under

a statute is called into question, if any state of facts can reasonably be conceived to sustain the classification, the existence of that state of facts at the time the statute was enacted must be assumed. *Thillens, Inc. v. Morey* (1957), 11 Ill. 2d 579, 594.

The declared purpose of title VI of the Enviromental Protection Act is "to prevent noise which creates a public nuisance." (Ill. Rev. Stat. 1983, ch. 111½, par. 1023.) Forming a background to the legislation we consider here, section 25 directs the Pollution Control Board to "categorize the types and sources of noise emissions that unreasonably interfere with the enjoyment of life, or with any lawful business, or activity, and shall prescribe for each such category the maximum permissible limits on such noise emissions." (Ill. Rev. Stat. 1983, ch. 111½, par. 1025.) The purpose of this amendment to the Act was to protect, within the comprehensive regulatory scheme, the property and other rights of residents who live near stadia by making the nighttime use of the stadia subject to the regulations of the Pollution Control Board. (See *Rockford Drop Forge Co. v. Pollution Control Board* (1980), 79 Ill. 2d 271.) We consider that the classifications in the statute are reasonably related to this purpose.

Only stadia in cities with more than one million inhabitants are subject to the regulations. Chicago is the only city in our State that has a population of more than one million. A legislative classification based upon population will be sustained "where founded on a rational difference of situation or condition existing in the persons or objects upon which [the classification] rests and there is a reasonable basis for the classification in view of the objects and purposes to be accomplished." (*People v. Palkes* (1972), 52 Ill. 2d 472, 477, quoting *Du Bois v. Gibbons* (1954), 2 Ill. 2d 392.) Considering the terms of this amendment, there is a rationally founded difference

between a less populous city and a city with a greater population. It might be reasonably anticipated that in a typical urban setting more people would be affected in the larger city by the noise from spectators in a stadium for a nighttime event. The problems attending a densely populated area would be exacerbated: limited areas for parking would become overburdened; neighborhood streets would become busier and thus potentially more dangerous to residents of the area and their children; and thoroughfares to and from the area would become more congested. Too, a rational basis may be found in the concern that there would be less open space in an area with a highly concentrated population that could serve as a buffer zone against the noise generated.

The same considerations serve as a proper basis for the distinction made by the legislature between nighttime and daytime sporting events. The General Assembly well might have concluded that the evening hours are traditionally spent in restful and quieter pursuits and should be protected by closer regulation. More residents would be at home during the evening hours, and there are variations in traffic patterns and in police patrol deployment between night and day hours which might have served as reasonable considerations by the legislature in enacting the statute. See *Gibbons v. City of Chicago* (1966), 34 Ill. 2d 102, 108 (incidence of crime is a reasonable legislative concern for ordinance prohibiting night operation of self-service laundry); *People ex rel. Skokie Town House Builders, Inc. v. Village of Morton Grove* (1959), 16 Ill. 2d 183 (traffic conditions considered in zoning ordinance which excludes future residences from industrial area).

The amendment distinguishes between professional and amateur sporting events. Amateur sports generally have shorter seasons than their professional counterparts and often attract fewer spectators. There also is a

widely entertained opinion that amateur athletics benefit the public, and the legislature may therefore have decided to limit the applicability of the statute to professional sports, which are profit-oriented enterprises. Finally, a provision exempts stadia where nighttime events were held prior to July 1, 1982. A legislature may, if it finds remedial measures necessary, address problems one step at a time. "The legislature may select one phase of one field and apply a remedy there, neglecting the others." (*Williamson v. Lee Optical of Oklahoma, Inc.* (1955), 348 U.S. 483, 489, 99 L. Ed 563, 573, 75 S. Ct. 461, 465.) We are unwilling to strike down as constitutionally infirm a classification because the legislature may have chosen to regulate expectant interests and not established interests. *Minnesota v. Clover Leaf Creamery Co.* (1981), 449 U.S. 456, 466, 66 L. Ed. 2d 659, 670, 101 S. Ct. 715, 725; *Katzenbach v. Morgan* (1966), 384 U.S. 641, 16 L. Ed. 2d 828, 86 S. Ct. 1717.

An ordinance adopted by the governing body of a city must satisfy the same requirement of reasonableness that is applicable to statutes enacted by the General Assembly. (*City of Carbondale v. Brewster* (1979), 78 Ill. 2d 111, 115.) Here the ordinance distinguishes between the hours of use, whether the stadia are open-air or enclosed, the seating capacity of the stadia and the proximity to dwelling units. As we observed earlier in discussing the statute, a regulatory scheme intended to abate public nuisances may reasonably distinguish between the hours of permissible use of land when that use may operate to interfere with property and other rights of the community. The distinction between open-air stadia and enclosed stadia may be rationally based on the different volumes of decibels of noise coming from open and enclosed stadia. The noise from an enclosed stadium is muted and less intrusive on area residents.

The city council established 500 feet as the required

distance between a stadium and the nearest dwelling unit. There is, of course, a reasonable relationship between the distance from the source of noise and the effect that the noise will have on the surrounding community. The city council also decided to restrict the ordinance's reach to stadia with seating capacities in excess of 15,000. The noise from smaller stadia with fewer spectators would not have the same intrusive effect on a neighborhood as the noise from larger stadia. The discretion of the council to create legislative classifications includes the authority to set permissible boundaries. The creation of classifications is for the judgment of the legislature, and its amending or modifying is not for courts to decide. (*Thillens, Inc. v. Morey* (1957), 11 Ill. 2d 579, 593.) Classifications are not required to be precise, accurate or harmonious so long as they accomplish the legislative purpose. *Illinois Housing Development Authority v. Van Meter* (1980), 82 Ill. 2d 116, 123; *Schiller Park Colonial Inn, Inc. v. Berz* (1976), 63 Ill. 2d 499, 512.

Simply, the Cubs have failed to meet the burden of showing the unconstitutionality of the legislative actions.

Accordingly the judgment of the circuit court is affirmed.

*Judgment affirmed.*